## BARKER, et al. v. CALLIHAN.

1. Where a writ of error is prosecuted by the defendants in a cause in chancery, a part of them cannot assign that for error which only affects their co-defendants.
2. The loser of notes at gaming, may file his bill in equity to restrain their transfer and the prosecution of suits upon them ; and this, whether the loser indorsed them, or passed them by *delivery merely*, or whether they remain in the hands of the winner, or have been transferred to a third person, *with notice* of the circumstances under which the winner acquired them.

Writ of error to the Chancery Court sitting at Cahawba.

Barker et al. v. Callihan.

The defendant in error filed an original and supplemental bill against the plaintiffs, which, so far as necessary to be noticed, allege, among other things, that the complainant was the proprietor of two promissory notes for one thousand dollars each, made by George Thomas, and payable to him, the one on the first of March, 1842, the other on the first of March, 1843. That these notes were won from him at a game called Faro, in the town of Selma, in October, 1841, by the defendants, James Barker, Luke Johnson, Daniel Aldrich and James Vardiman, who induced him to get drunk and game with them; while he was thus intoxicated, they defrauded him out of his property.

It is further alleged, that Hugh Ferguson, who is also made a defendant, (with a full knowledge of the foregoing facts, and that the complainant did not intend to submit to the imposition,) acquired the note first due, by purchase or otherwisee, from the persons, or some one of them, who had unjustly obtained it from the complainant.

The defendants, who are charged with having won the notes, made default, and as to them the bill is taken *pro confesso*. The other defendants answer, but Ferguson's answer is alone important to be considered. He states that he purchased the note for the sum of three hundred dollars, paid in cash; does not recollect whether he had notice that the note had been won at cards, or that the complainant still claimed it as his own; denies that he was informed that it was fraudulently acquired by gamblers.

The testimony shows that the notes were payable to complainant or bearer, and were merely delivered up by him without endorsement. That the complainant, and the defendants charged with having won the notes, were seen about the time alleged in the bill, engaged in gaming in Selma; that the complainant was drunk, and shortly thereafter the notes were in the possession of those defendants, and they claimed them as winners.

One witness states facts, and expresses the belief that Ferguson was aware before he purchased the note, that it was acquired by the seller at gaming; and another positively states, that he so informed him. In addition to this, Ferguson resided in the village of Selma, where the matter of the gaming and the loss of the notes were freely spoken of, and actually published by complainant in the town paper, of which Ferguson was a subscriber, and which was regularly received through a carrier. Whether the

publication in the paper was made before Ferguson purchased the note, does not positively appear from the evidence.

The Chancellor adjudged that Ferguson be perpetually injoined from proceeding at law to collect the note of Thomas, and that Thomas be perpetually injoined from paying the notes to any one else than the complainant or his order. *Also*, that complainant recover and have execution for the amount thereof against Thomas. *And*, further, that the complainant pay all costs.

The defendants all join in a writ of error, but under the rule, Barker, Johnson. Aldrich, Vardiman and Ferguson alone assign errors. They insist—1. That the Chancellor erred in decreeing a perpetual injunction against Ferguson. 2. In adjudging that Thomas pay the notes to the complainant—one of the notes not being due when the bill was filed ; and there being no evidence to show that it was due when the decree was rendered.

G. W. GAYLE for the plaintiff in error.
R. SAFFOLD for the defendants.

COLLIER, C. J.—It is immaterial to the parties who have assigned error here, what decree has been rendered against Thomas, if the cause has been correctly disposed of as to them. They cannot be permitted to allege an error as to him which does not affect themselves. [Morgan v. Crabb, 3 Porter's Rep. 470 ; Bumpass et al. v. Webb, 4 Porter's Rep. 65.] Here the important question is, whether the defendants claiming the notes, are, as against the complainant, entitled to them: if they are not, it is unimportant to their interests who receives the money.

The jurisdiction of equity in the present case, we think is unquestionable in order to prevent a transfer of the notes and the prosecution of suits upon them. The remedy afforded by a Court of Chancery, is certainly more effectual and complete than an action of detinue or trover could be, conceding that they are maintainable by the complainant. The act of 1812, which enacts that " courts of equity shall have jurisdiction in all cases of gambling consideration, so far as to sustain a bill for discovery, or to enjoin judgments at law," does not confer upon our courts of chancery, the entire jurisdiction they possess in cases of gaming contracts ; independent of legislation upon the subject, they

may grant relief in such cases, upon a proper showing being made. [Fenno, et al. v. Sayre & Converse, 3 Ala. Rep. 476. See also Lyon v. Respass, 1 Litt. R. 135.] But it is unnecessary to consider at greater length the question of jurisdiction. It is fully maintained by Roberts v. Taylor et al., [7 Porter's Rep. 256.] There, the court say, that the winner of a note or other security at an unlawful game, " can be considered in no other light than that of a trustee for the true owner"; and a proceeding by bill in equity injoining the maker from paying the money, was strictly correct.

The act of 1807, " to prevent the evil practice of gaming," [Aik. Dig. 209,] enacts that "All promises, agreements, notes, bills, bonds, or other securities or other conveyances whatever, made, signed, given, granted, drawn or entered, or executed by any person or persons whatsoever, after the passing of this act, where the whole or any part of the consideration of such promise, shall be for money or other valuable thing laid or betted at cards, &c., shall be utterly void, and of no effect," &c.   In Roberts v. Taylor et al. *supra*, it was held, under the influence of this statute, that the indorsement of a note or bond was a contract within its terms.   And being made to pay money lost at gaming, was void as between the original parties to the transaction, or in the hands of one claiming under the indorsee with notice of the circumstances.   In the case before us, it is true, that the notes were transferred by delivery merely, but this is not less a contract than if they had been indorsed.   It is an agreement within the terms of the statute, that the persons to whom the notes were delivered, should be their proprietors and receive the money thereupon; and if intended to pay losses sustained at the gaming table, is void, and passed no property in the notes to the winners.

The objection that the parties are in *pari delicto*, and equity will not therefore lend it aid to arrest the payment of the notes, cannot be sustained.   In the case last cited, the court say, "We hold that in all cases as between the *original parties*, the courts will interfere when the money has not been actually paid" on a gaming security.   If, as between the original parties, relief will be afforded against the winner, no argument can be necessary to prove that one claiming under him, *with notice*, stands in the same predicament.   This results from the analogies of the law, and from a very general, if not universal. rule which places pur-

chasers with notice, upon a footing with those under whom they claim.

The evidence is entirely satisfactory to show, that the notes were lost by the complainant at gaming, as alleged in his bill. Discarding the declarations of that fact made by the winners, and still the testimony is conclusive on the point. It is proved that the complainant while drunk was engaged with them at a game in Selma; that immediately thereafter the notes were in their possession: in addition to this, the agent of the winners informed Ferguson, that the note which he sold him had been won of the complainant. There is other evidence to this point, but it need not be noticed. The declarations of the winners, unexplained, are conclusive against them; and the other facts recited, not only show that the complainant lost them at gaming, but that Ferguson purchased with a knowledge of the fact. This being the case, it follows from what has been said, that the decree of the Chancellor is correct, at least so far as it concerns the parties who have here assigned error; and it is consequently affirmed.