### H. & B. BEER ET AL. V. D. LANDMAN.

No. 319.

**1. Facts—Jurisdiction.**

There being testimony upon which the finding of facts by the Court of Civil Appeals, that the matter was a gambling transaction arising out of speculation in cotton futures, can be supported, this court has no jurisdiction to revise such finding in a conflict of evidence...................................... 453

**2. Executed Contract—Pledge.**

The indorsement and delivery of negotiable notes as security vests in the indorser the legal title and a qualified interest in the notes so indorsed and delivered. The contract is executed between the parties—the indorser and the indorsee ....................................................................... 453

**3. Illegal Contract Executed.**

Where two parties guilty of participation in an unlawful transaction are in pari delicto, neither a court of law nor of equity will aid either party to recover or reinvest himself with any title or interest which he, in consideration of such unlawful contract, has vested in the other; but will leave them in the same condition as to vested interests that they by their own acts have placed themselves ............................................... 453

**4. Same—Case in Judgment.**

Landman being engaged with Beer & Beer in dealing in futures in cotton, became indebted to them in the business. To secure the indebtedness, he executed his own note and indorsed and delivered with it two vendor's lien notes as collateral. *Held,* that Landman could not recover the collateral notes. His defense to his own note could be made equally in an action at law or suit in equity......................................................... 455

**5. Test of Illegality.**

The plaintiff can not recover when it is necessary for him to prove, as a part of his cause of action, his own illegal contract or other illegal transaction. If he can not recover in a suit at law on account of the principle embodied in the maxim, "in pari delicto, melior est conditio possidentis," it follows, that he can have no relief in equity; for a court of equity will not relieve him from the operation of such principle, but merely lends its aid in the case of executory contracts when the circumstances are such that the defense at law is inadequate......................................... 455

**6. Equitable Jurisdiction.**

While courts of equity sometimes interfere to cancel such executory contracts after maturity, such jurisdiction is discretionary whether it will lend its aid in the given case. Such discretion is not arbitrary, but judicial, and should only be exercised when it appears from the case that equitable interference is necessary to establish such defense. See example wanting in grounds for equitable relief........................................ 457

ERROR to Court of Civil Appeals for Third District, in an appeal from McLennan County.

The opinion contains a statement.

*Robert H. Rogers* and *J. B. Scarborough,* for plaintiffs in error.—1. The court erred in overruling defendants' general demurrer to plaintiff's petition, because said petition stated and showed no cause of action on the part of plaintiff against these defendants, or any of them; the allegations being that plaintiff had gambled with the defendants H. & B. Beer, and for the money he had lost to said Beers he had given them his note for $525.40, due in November, 1892, and to secure said note he, plaintiff, had deposited as collateral security with said Beers the two vendor's lien notes for $500 each, given by Scoggin to plaintiff, and that these three notes were in the hands of Scarborough and Rogers, as attorneys for said H. & B. Beer, who were threatening to bring suit against Scoggin on said vendor's lien notes; and the prayer being, that the defendants be enjoined from suing on said notes, and be required by decree of the court to surrender them all to said plaintiff. Laws. on Con., sec. 54; Jones on Pledges, sec. 354; Jones on Chat. Mort., sec. 436; King v. Green, 88 Mass., 139; Harris v. Woodruff, 124 Mass., 205; Dougherty v. Bonavia, 124 Mass., 210; Clarke v. Lumber Co., 59 Wis., 655, 662; Cohn v. Heimbaugh, 56 N. W. Rep., 638, 639; Hunt v. Turner, 9 Texas, 389; Tragin v. Williams, 25 S. W. Rep., 1050.

2. If it was a gaming or illegal contract, the court should leave the parties as it finds them, to help themselves as best they can without the aid of the court, or suffer the consequences of their illegal acts. And the test as to whether any relief should be afforded is, whether the plaintiff requires the aid of the illegal transaction to establish his case. If a plaintiff can not open his case without showing that he has broken the law, a court should not assist him. Troewert v. Decker, 51 Wis., 46; Clarke v. Lumber Co., 59 Wis., 662.

3. A debt founded on a gaming contract is not void as between the parties, though noncollectible in the courts; and the pledger of property to secure such a debt can no more recover it by the aid of the courts than can the creditor recover the debt itself. Troewert v. Decker, 51 Wis., 46; Smith v. Bean, 15 N. H., 577; Perkins v. Jones, 26 Ind., 502; Cohn v. Heimbaugh, 56 N. W. Rep., 638, 639; 18 Am. and Eng. Encyc. of Law, p. 600, sec. 4, "Pledge."

*L. W. Campbell,* for defendant in error.—1. As long as the contract is still executory, equity has jurisdiction to aid the losing party by ordering the written agreement and other securities to be surrendered and cancelled, and by granting the ancillary remedy of injunction to restrain their negotiation, transfer, or enforcement; and when the circumstances are such that the remedy at law would not be equally certain and complete, this jurisdiction ought to be and will be exer-

cised.   Lewey v. Crawford (Texas), 23 S. W. Rep., 1041; High on Injunc., 1 ed., secs. 134, 135, 702; Pom. Eq. Jur., 2 ed., secs. 937–939, 940–942, and cases cited; 8 Am. and Eng. Encyc. of Law, 1020; Thompson v. Samuels (Texas), 14 S. W. Rep., 143.

2.  What may be done at law in a negative manner by defensive pleading and proof, may be done in equity by affirmative allegations and proof; i. e., courts of law and courts of equity are in perfect harmony, and will at all times aid in the destruction and cancellation of illegal and gaming contracts.   Neither a court of equity nor a court of law will aid a party in the enforcement of a gambling contract, but will always aid a party in his efforts to destroy it, regardless of the manner and means in which the jurisdiction is invoked, and regardless of the court in which the remedy is asked.

DENMAN, ASSOCIATE JUSTICE.—On account of dealings in cotton futures between D. Landman, appellee, and H. & B. Beer, appellants, closed in December, 1891, appellee owed appellants $1004 on open account, to secure which he indorsed and delivered to them two negotiable vendor's lien notes, hereinafter mentioned, and in August, 1892, he executed to the latter, in settlement of said open account, his two promissory notes for $525 each, one of which was subsequently paid, leaving the two collateral notes with them as security.   Before the filing of this suit, appellants, H. & B. Beer, residents of Louisiana, through their attorneys, Scarborough and Rogers, instituted suit in the County Court of McLennan County against appellee, Landman, on said principal note, the same being then past due.   Thereupon appellee filed this suit in the District Court, before the maturity of one of the collateral notes, alleging, that the principal notes were given in settlement of a balance due by him to H. & B. Beer on a gambling transaction arising out of speculation in cotton futures, and asking the court to enjoin appellants and their said attorneys from collecting said principal or collateral notes, and that on final hearing a decree be entered cancelling the principal note, and ordering the delivery over to appellee of said collateral notes; all of said notes being in the possession of said attorneys within this State for collection.   The trial court issued the temporary injunction as prayed for, whereupon appellants dismissed said cause in the County Court and answered herein, denying the illegality of the cotton transaction, and offering to deliver the two collateral notes upon payment of the principal note. The trial court, upon conflicting testimony, found that the consideration for which the principal note was given was a balance due upon a gambling transaction, and entered a decree cancelling said note, and ordering the delivery of said collateral notes to the appellee, Landman; which decree having been affirmed by the Court of Civil Appeals, appellants have brought the case to this court upon writ of error.

Two assignments are made in this court, as follows, to wit:

"1. The Court of Civil Appeals erred in holding, that the testimony supported the finding of the court below that the note was founded on a gambling transaction, for there is no evidence in the record to justify or excuse such finding.

"2. Admitting that this was an illegal transaction, and that the Beers can not recover judgment on the principal note, still the court was in error in holding that Landman, in a case like this, can recover from the Beers the possession of the collateral notes."

In regard to the first assignment of error, it is sufficient to say, that there was evidence supporting the finding of the court below and the Court of Civil Appeals, to the effect that the note was executed for the balance on a gambling transaction, and this being a question of fact, this court has no jurisdiction to revise their finding.

This brings us to the consideration of the second and last assignment of error above stated. In order to properly understand the point to be determined, it will be well to state that it does not involve the question as to whether, or under what circumstances, equity will lend its aid to cancel an executory contract founded upon an illegal consideration, as in case of the principal note above referred to; but it involves the sole question as to whether equity will interfere or lend its aid to cancel an executed contract, on the ground that the consideration thereof was illegal. For there can be no doubt that the indorsement and delivery of the negotiable notes to appellants, as security, vested in them the legal title thereto, and a qualified interest therein. Thus Landman, a party to the unlawful transaction, equally guilty with H. & B. Beer, having vested in the latter the legal title and qualified interest in said collateral notes, seeks to have a court of equity divest such title and interest out of the latter, and reinvest him therewith, on the ground of the unlawfulness of the transaction. He does not seek the aid of a court of equity in making a defense to an executory contract, but seeks its aid in attempting to disturb property rights conferred by him upon his accomplice.

Where two persons guilty of participation in an unlawful transaction are in pari delicto, as in this case, neither a court of law nor a court of equity will aid either to recover or reinvest himself with any title or interest which he, in consideration of such unlawful contract, has vested in the other, but will leave them in the same condition as to vested interests as they, by their own acts, have placed themselves.

Thus, Parke, B., in Scarfe v. Morgan (1838), 4 M. & W., 280, where a mare was delivered by plaintiff to defendant as security for a debt unlawfully contracted on Sunday, said: "This is not the case of an executory *contract;* both parties were in pari delicto—it is one which has been executed, and the consideration given; and although in the former case the law would not assist one to recover against the other, yet if the contract is executed, and the property, either special or general, has passed thereby, the property must remain;" and refused to allow plaintiff to recover.

In the leading case of Taylor v. Chester (1869), 4 L. R. Q. B., 313, it was held, that the plaintiff, having deposited with the defendant the half of a fifty pound bank note as a pledge to secure the payment for wine, etc., supplied to plaintiff by defendant in a brothel kept by her, to be there consumed in a debauch, could not recover such half note, the court saying: "Plaintiff's argument was based upon the hypothesis, that in spite of the finding of the jury, the plaintiff was entitled to recover by virtue of his property in the half note, and that it was the defendant alone who set up an immoral transaction as the answer to the plaintiff's claim. This argument appears to us to be founded upon an entirely erroneous view of the facts. The plaintiff, no doubt, was the owner of the note, but he pledged it by way of security for the price of meat and drink provided for, and money advanced to him, by the defendant. Had the case rested there, and no pleading raised the question of illegality, a valid pledge would have been created, and a special property conferred upon the defendant in the half note, and the plaintiff could only have recovered by showing payment or a tender of the amount due. In order to get rid of the defense arising from the plea, which set up an existing pledge of the half note, the plaintiff had recourse to the special replication, in which he was obliged to set forth the immoral and illegal character of the contract upon which the half note had been deposited. It was therefore impossible for him to recover except through the medium and by the aid of an illegal transaction to which he was himself a party. And under such circumstances, the maxim, 'in pari delicto, potior est conditio possidentis,' clearly applies, and is decisive of the case."

In the case of King v. Green (1863), 6 Allen (Mass.), 139, where plaintiff had pledged his watch to secure an unlawful livery bill, the court refused to allow him to recover the same, saying: "It is true that the law would not enable the defendant to recover such a debt (Way v. Foster, 1 Allen, 408); but neither will it enable the plaintiff to recover back his property given in pledge for the debt, any more than to recover back the money after paying it. In such cases the maxim, 'potior est conditio possidentis,' is applicable. The plaintiff has at least as little claim to the aid of the law as the defendant."

In Harris v. Woodruff (1878), 124 Massachusetts, 205, where plaintiff had delivered a mare to defendant for the purpose of training her for races, the court, after holding that defendant had an implied lien on the mare for such training, on the question of illegal consideration, Gray, C. J., said: "It is quite clear, that even if the parties were in pari delicto, 'potior est conditio possidentis,' and the law will not assist the plaintiff to obtain possession of the mare, without paying the defendant for his services under the executed contract, by which the general owner had voluntarily transferred to the defendant a special property in the mare."

The principles applicable to cases of this character will also be found ably discussed by Judge Gray, in Hall v. Corcoran (1871), 107 Massachusetts, 251, and Cranson v. Goss (1871), 107 Massachusetts, 440.

In Frost v. Plumb (1873), 40 Connecticut, 112, discussing the principle under consideration, and following in the line of the English and Massachusetts cases above cited, the court say: "We understand the rule to be this: the plaintiff can not recover when it is necessary for him to prove, *as a part of his cause of action,* his own illegal contract, or other illegal transaction; but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important even as explanatory of other facts in the case, he may recover. It is sufficient if his cause of action is not essentially founded upon something which is illegal. If it is, whatever may be the form of the action, he can not recover."

If appellee were to sue in a court of law for the possession of the notes, and appellants were to answer, that the legal title and special interest therein had been vested in them by the indorsement to secure an indebtedness, such answer would be a complete defense to appellee's suit, without setting up any facts implicating appellants in the unlawful transaction. Therefore, appellants' defense would not be based upon the illegality. In order to avoid such defense, appellee would be compelled to urge and rely upon his own participation in the unlawful transaction, thus bringing himself directly within the rule laid down in the case of Taylor v. Chester, and other authorities above cited, which prohibit his recovery.

If he can not recover in a suit at law, on account of the principle embodied in the maxim, "in pari delicto, melior est conditio possidentis," it follows, that he can have no relief in equity; for a court of equity will not relieve him from the operation of such principle any more than will a court of law, but merely lends its aid in the case of *executory* contracts, when the circumstances are such that the defensive remedy at law is not equally certain, complete, and adequate as it may be made in equity. Adams Eq., 175; Pom. Eq. Jur., secs. 937–941, and authorities cited. We are therefore of the opinion, that the court erred in ordering the appellants and their attorneys to deliver to appellee the collateral notes.

In Taylor v. Chester and Harris v. Woodruff, above cited, it is not decided, but strongly intimated, that if plaintiffs had paid or tendered the amounts due, they could have recovered. We have not been able to find any case deciding this question or discussing the principles upon which such a recovery could be based.

Since neither a court of law nor equity will allow the general owner to recover against the special owner, where they are in pari delicto, but will leave them in the condition in which they are found, the word "condition" referring to vested property rights, we do not see upon what ground either of such courts could undertake to hold that it would

allow a recovery on condition of payment, as the policy of the law prohibits any interference by the courts. If, however, the plaintiff voluntarily pays the debt for which the property is pledged, such payment would, ipso facto, destroy defendant's special title; and it may be, that under the above reasoning plaintiff might then recover upon his general title, there being no special title in the defendant, and that if defendant should set up such special title, plaintiff could defeat it by answering and showing its destruction by such payment, without relying upon or asking any relief or aid from the court by reason of the illegality of the contract.

For the error above indicated, the judgment will be reversed and the cause remanded.

We are not unmindful of the fact that there are cases holding that money paid on, or collateral delivered as security for, gaming debts may be recovered; but we think it will be found that these cases do not conflict with the principles announced above, but are based upon statutes, declaring as void any notes given or transfers made of collaterals to secure gaming debts, some of the statutes having gone so far in attempting to suppress gaming as to provide for a recovery in such cases. It would seem that these cases are really based upon the proposition, that since the statute declares the indorsement void, no legal or special ownership ever existed in the indorsee, and therefore no defense could be made, on the ground of such special ownership, to a suit by the owner relying upon his original title, and it would not be necessary for such owner to set up the illegal transaction to defeat an asserted special title which is declared void by the statute. In so far as these cases may appear to be based upon the proposition that a court of equity, independent of statute, has any more power to allow a recovery in gaming cases than it has in other unlawful transactions, where the parties are in pari delicto, we do not think they are based upon sound reasoning. The following are some of the cases referred to. Rawden v. Shadwell, 1 Ambler, 268; Roberts v. Taylor, 7 Porter (Ala.), 251; Barker v. Callihan, 5 Ala., 708; Smith v. Bean, 15 N. H., 577; Tantum v. Arnold, 42 N. J. Eq., 61; Clarke v. Lumber Co., 59 Wis., 655.

In view of another trial, it becomes proper for us to express an opinion upon the question as to whether appellee had a right to apply to a court of equity, under the circumstances above stated, for a cancellation of the principal note, although the action of the trial court thereon, assigned as error in the Court of Civil Appeals, was not assigned as error here. The fact that the consideration of an executory contract arises out of an illegal transaction is as complete a defense in an action brought upon such contract in a court of law as it is a ground for cancellation thereof in a suit in equity. The true ground upon which equity interferes is not that there is no remedy at law, which is the usual ground of equitable jurisdiction, but that the circumstances are such that the defensive remedy at law would not be equally cer-

tain, complete, and adequate as it could be made in equity, the decree of cancellation being only an equitable mode of rendering that defense effectual.    Adams Eq., p. 175.

With this purpose and limitation in view, courts of equity have often interfered to cancel such executory contracts after maturity thereof; one of the reasons justifying such interference being, that since the illegality does not appear upon the face of the instrument, the evidence thereof might be lost to the petitioner by delay in the institution of the suit at law.    The principle embodied in the maxim, "in pari delicto, melior est conditio possidentis," presents no obstacle to such defense at law or in equity; for the establishment of such defense, either at law or equity, satisfies such principle, by leaving the promissor undisturbed in the possession of the money or other property which he agreed to pay or deliver on the unlawful transaction.    2 Pom. Eq. Jur., sec. 939; Adams Eq., 174–176; Simpson v. Howden, 3 Myl. & Cr., 98; Wynne v. Callander, 1 Russ., 293; Woodroffe v. Farnham, 2 Vern., 291; 2 Head (Tenn.), 617.

Since, as above indicated, the same defense may be made defensively at law or affirmatively in equity, and since equity only lends its aid in making such defense for the reasons above indicated, it follows, that it is discretionary with a court of equity whether it will lend its aid under all the circumstances of a given case; for otherwise, every such case might be brought into a court of equity, simply because the court had the bare jurisdiction to entertain such suit.    Such discretion is not arbitrary, but judicial, and should only be exercised when it appears from the facts of the given case that equitable interference is necessary to establish such defense.    Hamilton v. Cummings, 1 Johns. Ch., 517; Ryan v. Soule (Vt.), and note, 13 Am. Law Reg., N. S., pp. 36–40; Railway v. Ware, 74 Texas, 47; Railway v. Wright, ante, p. 346.

In the case before us, suit was brought on the note in the County Court, thus affording plaintiff an opportunity to make his defense at law with the evidence still in existence.    He voluntarily declined to do so, and applied to a court of equity for a cancellation of the note and an injunction against its collection, without alleging any reason or excuse whatever for not making his defense at law in the suit then pending.    It is true, he seeks the additional relief of having the collateral notes returned to him; but as we have seen above, he was not entitled to such relief, and therefore that circumstance afforded no additional ground for his appeal to equity.

We are of the opinion, that under the facts of this case appellee was not entitled to the interposition of equity for the purpose of cancelling said note.

*Reversed and remanded.*

Delivered June 27, 1895.