SANGER v. FUTCH.　(No. 5963.)

(Court of Civil Appeals of Texas. Austin. Dec. 11, 1918. Rehearing Denied Feb. 5, 1919.)

1. CANCELLATION OF INSTRUMENTS ⟨⟩37(1) —PLEADING—SUFFICIENCY OF PETITION—ILLEGAL TRANSACTION.

Petition seeking cancellation of deeds alleged to have been executed to defendant as accommodation to secure dealings in cotton futures was not subject to general demurrer because of allegation of plaintiff's knowledge that money was to be used for illegal purpose, where it did not appear from petition that plaintiff was in pari delicto with defendant, as the cancellation of the deeds would not be in furtherance of the illegal transaction.

2. APPEAL AND ERROR ⟨⟩1099(6) — SUBSEQUENT APPEAL—LAW OF CASE—SUFFICIENCY OF PETITION.

Decision of Supreme Court denying writ of error to review decision of Court of Civil Appeals sustaining sufficiency of petition to state cause of action as against general demurrer was binding on subsequent appeal involving sufficiency of same petition.

3. APPEAL AND ERROR ⟨⟩999(1)—REVIEW— SPECIAL VERDICT.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1986, providing that a special verdict is conclusive between the parties as to the facts found by the jury, a special verdict should be upheld unless there is no evidence to sustain it.

4. JUDGMENT ⟨⟩198 — RENDITION ON SPECIAL VERDICT.

In view of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1986, 1990, the trial court should render judgment on jury's findings of special issues unless verdict be set aside or new trial granted.

5. CANCELLATION OF INSTRUMENTS ⟨⟩50— QUESTIONS FOR JURY—CONSIDERATION.

In action to cancel deeds alleged to have been executed as an accommodation to defend-

ant for use in raising money, without intention to pass title or possession, where defense was that deeds were executed in settlement of plaintiff's indebtedness to defendant, evidence *held* insufficient to entitle defendant to instructed verdict.

6. EVIDENCE ⊜═➣443(3) — WARRANTY DEED —PAROL AGREEMENT.

In action to cancel warranty deeds alleged to have been executed for accommodation of defendant for use as collateral for loan without intention to fully pass title, evidence as to agreement at time of execution, whereby plaintiff's wife was to continue collecting rents from property, was admissible to prove that such agreement was part of consideration.

7. EVIDENCE ⊜═➣419(2) — PAROL EVIDENCE —CONSIDERATION OF DEED.

Parol evidence is admissible to show the true consideration of a deed although it may not be disclosed upon its face.

8. CANCELLATION OF INSTRUMENTS ⊜═➣50 — DEEDS—JURY QUESTION—NATURE OF TRANSACTION.

In action to cancel deeds alleged to have been executed without intention to pass title or possession, but for accommodation of defendant for use in raising money, whether it was understood between parties at time of execution that property was to vest in defendant, purely for purpose of enabling him to raise money, was an issue of fact for the jury.

9. JUDGMENT ⊜═➣198 — SPECIAL VERDICT — CONFLICTING EVIDENCE.

Where evidence was conflicting, and tended to support theory of both defendant and plaintiff, where findings of jury were in support of plaintiff's theory of case, court properly entered judgment for plaintiff.

10. APPEAL AND ERROR ⊜═➣930(3)—REVIEW—PRESUMPTIONS.

In action to cancel deeds claimed by defendant to have been deeds of trust to secure sum advanced by defendant for plaintiff, where defendant failed to request special finding in favor of lien on land, it will be presumed on appeal, in support of judgment for plaintiff, that court found against legality of lien.

11. APPEAL AND ERROR ⊜═➣930(3)—REVIEW—PRESUMPTIONS.

Where defendant did not request special finding of certain issue raised by plaintiff's supplemental petition in reply to defendant's cross-action, it will be presumed on appeal that court found against defendant on such issue.

12. GAMING ⊜═➣18—FORECLOSURE OF MORTGAGE.

Where deed of trust was executed to secure grantor's indebtedness to grantee, which was incurred by grantor in furtherance of cotton future transactions wherein grantee acted as grantor's agent, the court will refuse to foreclose lien.

13. GAMING ⊜═➣18—DEEDS OF TRUST.

Where deed of trust was executed to secure grantee against loss in guaranteeing grantor's indebtedness, and the written guaranties were executed at time of execution of deed, but no money passed at such time, the guaranties and deed of trust did not become effective until the delivery of the guaranties by grantor to grantee, and, where delivered in settlement of cotton future transactions between them, the deed of trust and guaranties became a part of such illegal transaction.

Appeal from District Court, McLennan County; Geo. N. Denton, Judge.

Action by J. J. Futch against C. L. Sanger. Judgment for plaintiff, and defendant appeals. Affirmed.

J. D. Williamson, of Waco, for appellant.

R. Q. Murphree, J. A. Kibler, and Sleeper, Boynton & Kendall, all of Waco, for appellee.

BRADY, J. Appellant's brief contains a statement of the nature and result of the suit, which is accepted by appellee as substantially correct, and which we adopt, as follows:

"This suit was instituted by J. J. Futch as plaintiff in the court below, seeking the cancellation of two deeds executed and delivered by J. J. Futch to C. L. Sanger on November 19, 1912, covering two tracts of land in Waco, McLennan county, Texas, which were described by field notes in his said petition, plaintiff alleging that in each of said deeds the consideration was recited at $1,500.00 cash in hand paid, and that at the time that the said deeds and conveyances were made and executed, that plaintiff and defendant each understood, knew, and agreed that said deeds and transfers were not in fact and truth made as bona fide deeds and conveyances, but, on the contrary, were made for the following purposes and consideration; that the defendant, C. L. Sanger, was then, and had been for a length of time prior thereto, engaged in the business of what is commonly known as a dealer in cotton futures, and the plaintiff had contracted with said defendant as such cotton broker to sell and buy through the brokerage of defendant, at sundry times and prices, sundry and numbers of bales of cotton; that it was never in the contemplation of plaintiff or defendant that the actual delivery of said cotton should be made, but, on the contrary, was to be settled in dollars and cents, according to the rise or fall of the market prices of said cotton; and that by reason of said buying and selling of cotton futures as alleged, that the defendant did on or about the 19th day of November, 1912, falsely and fraudulently represent to plaintiff that he, the said Sanger, was then in great need of money, and if this plaintiff would execute and deliver to him the deeds to the land described that he, the defendant, could and would use said deeds and title to said premises for security for himself in the furtherance of said business; and that, by reason of said representations so made by the defendant, plaintiff did execute, sign, and deliver said deeds, but the same were not at any time a settlement or closing of the gambling contracts of plaintiff and

defendant for the settlement of any debt or claim due defendant by plaintiff.

"Plaintiff further alleged that the considerations recited in said deeds were false and fictitious, and that the recited consideration of $1,500.00 in each of said deeds, or no other amount, was paid at the time of said transfers, but that the said deeds and conveyances were executed and delivered as a matter of accommodation of plaintiff to defendant.

"Plaintiff prayed that said deeds be canceled, and that the cloud cast upon plaintiff's property by said deeds be removed, and for general relief.

"The defendant answered said petition, first, by general demurrer; second, by general denial; and, third, by special answer, denying that he was engaged in the business of cotton futures or personally interested in any of the transactions set out in his answer, but alleged the facts to be that on September 3, 1912, plaintiff came to defendant, and represented that he desired to engage on his own account in the spot cotton business in the city of Waco; that in order that he might do such business with profit, and protect himself against losses, that it would be necessary that he be able to make arrangements to get money to buy cotton, and in addition that he be able to make arrangements wherein and whereby he could hedge his cash purchases of cotton or contracts by selling futures against such contracts; that he desired to obtain credit and a guaranty from defendant; that defendant, being desirous of assisting plaintiff, agreed with him that if he would execute two notes, one in the sum of $1,500.00, and one in the sum of $500.00, due and payable May 1, 1913, which notes were to be secured by a lien upon the same real estate that was subsequently deeded to defendant, that the defendant would furnish plaintiff, Futch, means and credit for the conduct of his business to the amount and extent of $2,000.00, and thereafter might furnish him additional means and credit to the amount and extent of $2,000.00.

"That plaintiff duly executed the two certain promissory notes of $1,500.00 and $500.00 each to plaintiff, and on the 9th day of September, 1912, plaintiff and his wife executed a deed of trust on the two tracts of land subsequently deeded to defendant, to secure defendant in the payment of said notes and the additional amount of $2,000.00 which might be furnished; that on the same date, to wit, September 9, 1912, defendant gave plaintiff his three certain instruments in writing, worded as follows:

" 'To Whom It may Concern: This is to inform you that I hereby guarantee the account of J. J. Futch to an amount not exceeding $500.-00, this guaranty to be good until the 1st of May, 1913;' which instruments were signed by defendant.

"That in addition to the execution and delivery of said guaranties, that the defendant guaranteed the account of Futch in the purchase and sale of cotton for hedging purposes with the firm of Kahn & Ettelson, of New York; that said purchases and sales made in New York were made in the name of this defendant, but were the purchases and sales of Futch, and were made by him and not by this defendant.

"That thereafter Futch made his certain future transactions with Kahn & Ettelson in New York, and on the 19th day of November, 1912, that the said Futch, as a result of his transactions through Kahn & Ettelson, had made losses on such transactions, and this defendant, by virtue of his guaranties to such transactions, was indebted to Kahn & Ettelson in the sum of $3,076.00, which sum he paid; and that the defendant called on said Futch to pay said amount, and that said Futch thereupon agreed to pay same, provided that the defendant would advance him $1,000.00 additional, or guarantee him future purchases through Kahn & Ettelson to that amount and extent. He agreed that he would pay such amount by executing and delivering to the defendant the deeds to the two pieces of real estate described in plaintiff's petition, and upon which defendant then had a deed of trust as above set forth.

"That defendant accepted said proposition, and on said day and date the said Futch executed two certain warranty deeds to said premises, and delivered said deeds and possession of said land to defendant, and that defendant did advance the sum of $1,000.00 additional for Futch to Kahn & Ettelson, and that said funds were thereafter lost by plaintiff in his cotton transactions.

"The defendant further alleged that the plaintiff conducted all of said transactions and negotiations, received the benefits of such transactions as were in his favor, and ratified and confirmed the payment of all losses which he made.

"Defendant further alleged that he was in no manner interested in said transactions, and there was no profit therein for him in any manner on said transactions, either in the way of commissions or otherwise.

"The defendant, by way of cross-action, alleged that if for any reason the deeds in question did not convey title, then he sought a foreclosure of his deed of trust lien upon the said two pieces of property for the $4,000.00 advanced, with interest on same, further alleging that he was in possession of the property, and that he was willing to surrender possession thereof upon payment of his debts. The defendant prayed that he go hence without day, or that, if the deeds be canceled, he then prayed for foreclosure of his lien upon the property. The plaintiff filed a supplemental petition, denying all of the matters that were alleged by the defendant.

"The defendant's general demurrer was overruled. The case was submitted to a jury upon special issues, and, upon their answers to such special issues, judgment was rendered in favor of plaintiff, canceling the two deeds, and refusing the defendant a foreclosure of his lien as against Futch, and refusing defendant a judgment for the moneys that he had advanced to Futch. A motion for new trial and amended motion were seasonably filed, which were by the court overruled. The defendant, C. L. Sanger, duly filed a bond, bringing this cause before this court on appeal for revision and correction."

By the first assignment of error appellant complains of the action of the trial court in overruling his general demurrer, because appellee's petition shows upon its face that he was seeking relief of the court in aid of a gambling contract, and set up a cause of action not cognizable by a court of law or equity.

We think the assignment is without merit. This same question was before this court, upon the same petition, in Futch v. Sanger, 163 S. W. 597. There the court below sustained a general demurrer to the petition, and in an opinion by Justice Rice we held that it was error, and reversed and remanded the case. It is unnecessary to repeat the reasons assigned for holding that the petition stated a good cause of action, or to again review the authorities cited by Justice Rice. The gist of the decision was that the plaintiff alleged a mere knowledge that the property might or could be used by the defendant in conducting an unlawful business, but did not allege any facts showing that he did anything in furtherance of defendant's illegal business, and therefore these facts did not make the petition bad upon general demurrer. A writ of error was applied for in that case, but denied by the Supreme Court (170 S. W. xvii).

We might well rest our conclusion overruling the first assignment upon the authority of the previous holding, but appellant has cited certain authorities, which we will briefly consider, and also tersely state the general principles upon which we adhere to our former ruling.

[1] We think the petition good as against a general demurrer, because it does not appear therefrom that appellee sought the aid of the court in furtherance or enforcement of the illegal transactions, and, further, because it does not show the parties in pari delicto. His cause of action, as pleaded, was not essentially founded upon anything illegal, although an apparently illegal act was incidentally alleged as explanatory of the other facts in the case. Under the weight of authority, these averments did not make the petition subject to general demurrer.

Appellant cites several authorities in support of his contention that the general demurrer should have been sustained, all of which, we think, may be differentiated from the instant case.

In Jones v. Akin, 80 S. W. 385, this court, speaking through Justice Key, held that a check given for borrowed money, with knowledge on the part of the lender that it was to be used by the borrower to gamble at cards, could not be collected by suit; and he refers as authority to the case of Reed v. Brewer, a Supreme Court decision (90 Tex. 145, 37 S. W. 418), which we will later briefly review. We regard the facts as different from those alleged in this case, and also that, in Reed v. Brewer, the Supreme Court did not decide that mere knowledge of an intended illegal use of borrowed money would debar the lender from a recovery. It is further to be borne in mind that Justice Key stated in his opinion in Jones v. Akin that there was some testimony in the record showing that the lender actually participated in the game in which the borrowed money was used. In effect, this testimony would show an actual furtherance of, and participation in, the illegal transaction, and this consideration alone might serve to distinguish the case.

In the case of Reed v. Brewer, 90 Tex. 145, 37 S. W. 418, relied upon by appellant, the suit was based upon notes given for furniture which was known by the vendor to be intended to be used by the vendee in conducting a house for prostitution. The Supreme Court concluded that the facts not only showed knowledge by the vendor of the illegal purpose for which the goods were bought, but also that the trial court might have concluded from the facts that at the time of sale he contemplated and actually afterwards aided and abetted the vendee in the unlawful venture. The Supreme Court expressly refrained from expressing any opinion upon the legality of the notes had the proof only showed a sale with mere knowledge of the intended unlawful use, and that the illegal business was the only means of paying for the same. Therefore we do not consider this case in point.

Appellant further cites the case of Beer v. Landman, 88 Tex. 450, 31 S. W. 805. The facts of this case show that appellee executed to appellant, upon an illegal consideration, two principal notes, and also two collateral vendor's lien notes. One of the principal notes having been paid, appellant brought suit in the county court upon the remaining note. Before that suit could be tried appellee filed his suit in the district court, asking an injunction against appellants to restrain the collection of both the principal and collateral notes, and for cancellation of the principal note and redelivery of the collateral notes. Justice Denman expressly stated that the point before the court did not require a ruling upon the question as to why or under what circumstances equity would lend its aid to cancel an executory contract founded upon illegal consideration, as in the case of the principal note referred to. The Supreme Court held that the evidence showed the parties were in pari delicto, that the contract as to the collateral notes was executed, and that equity would not aid either of them. As to the principal note, however, the court held that because appellee Landman had had an opportunity to make his defense at law in the county court while the suit was pending there, and before it was dismissed, and having voluntarily declined to do so, he could not ask an injunction against the collection of the note without alleging some sufficient reason for not making his defense at law while the suit was pending and before its dismissal.

Considering all the facts in the case, we do not think Beer v. Landman in conflict with the conclusion we have reached, especially in view of the allegations in appellee's peti-

tion in the present case charging that he had executed the deeds to the property in question to appellant merely for the latter's accommodation, and not intending to pass full title to him, and that he had not parted with the possession thereof, but that appellant was illegally seeking to claim both the title and possession thereof.

It is also to be noted that among the cases cited with approval by Justice Denman in Beer v. Landman is that of Frost v. Plumb, 40 Conn. 112, 16 Am. Rep. 18, wherein the rule is announced that the test is whether the plaintiff in the particular case is obliged to prove his own illegal act or contract as a necessary part of his cause of action, and that if he can show a complete cause of action without relying on his own illegal act he may recover, although incidentally such illegal act may appear, and may even be important as explanatory of other facts in the case. This latter authority, we think, announces the correct principle applicable to this case under the pleadings of appellant.

[2] It follows that we are of the opinion that none of the cases cited by appellant are applicable under the particular facts, and are certainly not controlling in this case. On the other hand, the sole question before this court in Futch v. Sanger, 163 S. W., supra, was whether the trial court there properly sustained the general demurrer to the very petition that is now before us. Necessarily, this was the only question before the Supreme Court when the application for writ of error was denied, and we think this action of the Supreme Court must be construed as approving our holding that the petition was good on general demurrer, and that the question is therefore settled. So believing, we overrule appellant's first assignment of error.

By his second assignment appellant attacks the refusal of the trial court to give the peremptory instruction requested by appellant, because it is claimed that the evidence showed that the deeds were executed and delivered either in settlement of gambling contracts or transactions, or in furtherance thereof, and that therefore a court should not aid either party to the illegal transactions.

This case was submitted to the jury upon special issues, the questions and answers of the jury being as follows:

"Special Issue No. 1: Were the deeds in question executed by Futch with the understanding and agreement between him (Futch) and the defendant, Sanger, that they were executed merely for the accommodation of the defendant, Sanger? Answer this issue 'Yes' or 'No.'

"To special issue No. 1 we answer, 'Yes.'

"Special Issue No. 2: Did the plaintiff, Futch, execute the deeds in question to the defendant, Sanger, in settlement or satisfaction of the indebtedness owing by Futch to Sanger on account of losses in cotton future dealings between the said Futch and the said Sanger? Answer this issue 'Yes' or 'No.'

"To special issue No. 2 we answer, 'No.'

"Special Issue No. 3: If you answer special issue No. 2 'Yes,' then did Futch ever deliver possession of the property in question to the defendant Sanger? You will answer this issue 'Yes' or 'No,' and in determining your answer to the same you may take into consideration all of the evidence, facts, or circumstances which may have been introduced in evidence; and if you should find from the evidence that at the time of the execution of said deeds it was understood and agreed between the said Sanger and the said Futch that the said Sanger could collect and be entitled to all the rents arising from said property free from any conditions, and without having to account to the said Futch for the same, and that said rents were to become the property of the said Sanger after the execution of said deeds, then, and in such event, if you so find from the evidence, you will answer this special issue 'Yes'; but if you should find from the evidence that said Sanger was not to receive or collect said rents, or that he should collect same upon some condition or understanding between the parties, or that same should not become the property of said Sanger when collected, then and in such event, if you so find from the evidence, you will answer this issue 'No.'

"To special issue No. 3 we answer, '————.'

"Special Issue No. 4: If you have answered special issue No. 2 in the affirmative—that is, if you find from the evidence that said deeds were executed in settlement of an indebtedness between the said Sanger and the said Futch—then did the defendant, Sanger, agree to advance any additional amount to the plaintiff for the purpose of enabling the plaintiff to deal in cotton futures to be engaged in after the execution of said deeds between the said Sanger and the said Futch? Answer this issue 'Yes' or 'No.'

"To special issue No. 4 we answer '————.'

"Special Issue No. 5: What was the amount of the indebtedness owed by Futch to Sanger on November 19, 1912? You will answer this special issue by writing the amount in dollars and cents.

"To special issue No. 5 we answer, '$3,171.69.'

"Special Issue No. 1, requested by the plaintiff (and given by the court): At the time the deeds in question were executed by Futch to Sanger, find whether or not it was understood between them that the title to the property was to vest in Sanger for the purpose only of enabling Sanger to thereby raise money for his (Sanger's) use? Answer this issue 'It was' or 'It was not.'

"We, the jury, in answer to special issue No. 1, requested by the plaintiff, find, 'It was.'

"Special Issue No. 2, requested by the plaintiff (and given by the court): Was the defendant, Sanger, acting as the agent for Kahn & Ettelson in the sale of the cotton futures purchased by the plaintiff, Futch, an account of which the indebtedness of Futch to Sanger was incurred? Answer this issue 'He was' or 'He was not.'

"We, the jury, in answer to special issue No. 2, requested by the plaintiff, find, 'He was.'

"Special Issue No. 3, requested by the plaintiff (and given by the court): Was the two thousand dollars secured by the deed of trust which has been introduced in evidence used by

Futch in furtherance of his cotton future transactions with Sanger with the defendant Sanger's knowledge? Answer this issue 'It was' or 'It was not.'

"We, the jury, in answer to special issue No. 3, requested by the plaintiff, find, 'It was.'

"Defendant's Special Issue No. 1 (given by the court): On November 19, 1912, when the plaintiff executed the deeds in evidence in this case to the defendant, were such deeds executed in furtherance of, or for the purpose of permitting the plaintiff to have further dealings in cotton futures through the credit to be furnished by the defendant? Answer this issue 'Yes' or 'No,' as you find the facts to be from the evidence.

"We, the jury, answer special issue No. 1 (requested by the defendant), 'No.' "

In view of the fact that the case was submitted upon special issues, and that the jury returned special findings thereunder, which are not directly challenged by any assignment as being unsupported by the evidence, it is very doubtful whether the mere request for a peremptory instruction, and alleged error in refusing it, is sufficient challenge to the sufficiency of the evidence to support the verdict and judgment, so as to require this court to search the statement of facts to determine the sufficiency of the evidence. See Essex v. Mitchell, 183 S. W. 399.

[3, 4] Furthermore, under our statute a special verdict is conclusive between the parties as to the facts found by the jury (article 1986, Vernon's Sayles' Civil Statutes), and should be upheld, unless there is no evidence to sustain it. The issues submitted to the jury were all made by the pleadings, and each question required to be answered by the jury was answered, and we do not find that in any of the assignments contained in his brief appellant directly challenges the findings of the jury as contrary to the evidence. Under our statute, and numerous decisions of our courts construing it, the trial court shall, unless the verdict be set aside or a new trial granted, render judgment thereon. Article 1990, Vernon's Sayles' Civil Statutes. We do not believe that the court below could have entered any other judgment upon the special verdict than one in plaintiff's favor; and the insufficiency of the evidence to support the particular findings not being directly raised by assignments presented in the brief, it would seem that we should not be required to examine the statement of facts for all the evidence appearing upon the material issues in the case.

Appellant, however, requested a peremptory instruction before the special issues were submitted by the court, duly preserved his exception, made the claimed error in refusing the charge a ground in his motion for new trial, and also in his motion for new trial moved to set aside the findings on the material issues, and by the last assignment mentioned challenges the correctness of the court's ruling in refusing to so instruct the jury. Therefore it is possible that appellant may be entitled to have the statement of facts examined, and his full statement under said assignment considered, in order to determine whether upon the entire evidence he was entitled to a peremptory instruction, and we will so treat the question.

We have carefully read the evidence in the statement of facts, and we do not believe that the same entitled the appellant to a peremptory instruction. The testimony of the appellee, Futch, was to the effect that appellant represented to him that he was needing some money in his business, and that, if Futch would make him a deed to the property in controversy, it would enable him to raise the money by using the property as security. Appellee further testified that in order to help appellant, and because of their business dealings together previously, he agreed to convey the property to him merely as an accommodation, and without the intention of finally or fully passing title or possession to same. He further testified, substantially, that the conveyance was not made in settlement of any indebtedness owing by him to appellant, and especially was not made to settle any debts growing out of gambling transactions, or, in other words, future cotton contracts. All this was vigorously denied by appellant, who claimed that the consideration for the deeds of conveyance was the indebtedness owing by appellee to him, growing out of future contracts for the purchase or sale of cotton on the New York Exchange, and of other similar contracts to be thereafter made, and that the deeds were intended to fully pass the title, as well as the possession to appellant.

[5] As we have shown above, the jury found against appellant upon these issues; but, independently of their findings, we certainly are not able to say that the evidence is such as to have entitled appellant to an instructed verdict. We do not think it necessary to go into the details of the evidence, but believe the above conclusions are fully supported by the testimony. We overrule appellant's second assignment of error.

Appellant's third assignment of error relates to the alleged error of the trial court in permitting appellee, Futch, over the objection and exception of appellant, to testify in substance that it was agreed, at the time the deeds in question were executed, that his wife should collect the rents on said properties, and should not be disturbed in the collection thereof, because the deeds were general warranties with no reservation or limitation therein, and that by such testimony it was sought to vary a written instrument, without pleading fraud, accident, or mistake, and further because rent, being one of the incidents of ownership, passed with the title, and could only be reserved in the deeds themselves, and not by parol contract. These objections to this testimony were duly preserved in a bill of exception copied in the statement under said assignment.

[6] One of the issues made by the pleadings was that, while the deeds were on their face general warranty deeds, they were in fact made for the accommodation of appellant, and merely for the purpose of enabling appellant to raise money for his business ends, and to be used as security for such purposes; and also that part of the inducement and consideration for the execution and delivery of the deeds was the agreement on appellant's part not to disturb appellee's wife in the collection of the rents from the property. As we understand the record, this testimony was introduced and admitted for this purpose, and we believe the testimony was admissible.

The issue was afterwards submitted to the jury in special issue No. 3; but the question was not answered, because dependent upon an affirmative answer to special issue No. 2, which the jury answered "No." The testimony complained of was admissible to show the intention of the parties as to the purpose of the deeds and the inducement and real consideration therefor. We do not think it varied or contradicted the written instrument, but was explanatory thereof, and related to the real consideration, as well as to the intention of the parties.

[7] Under the authorities parol evidence is admissible to show the true consideration of a deed, although it may not be disclosed upon its face, and parol evidence is admissible for such purpose. Loving v. Milliken, 59 Tex. 423; Ry. v. Jones, 82 Tex. 160, 17 S. W. 534; Moore v. Kirby, 52 Tex. Civ. App. 200, 115 S. W. 632; Miller v. Yturria, 69 Tex. 554, 7 S. W. 206; Nagle v. Simmank, 54 Tex. Civ. App. 432, 116 S. W. 862; McLean v. Ellis, 79 Tex. 398, 15 S. W. 394; Morehead v. Hering, 53 Tex. Civ. App. 605, 116 S. W. 164; Tipton v. Tipton, 55 Tex. Civ. App. 192, 118 S. W. 842; Ellis v. Lehman, 48 Tex. Civ. App. 308, 106 S. W. 453; Springman v. Hawkins, 52 Tex. Civ. App. 249, 113 S. W. 966; Pope v. Taliaferro, 51 Tex. Civ. App. 217, 115 S. W. 309. It follows that appellant's third assignment of error must be overruled.

Appellant's fourth assignment of error complains of the submission to the jury of special issue No. 1, requested by plaintiff, which issue is as follows:

"At the time the deeds in question were executed by Futch to Sanger, find whether or not it was understood between them that title to the property was to vest in Sanger, for the purpose only of enabling Sanger to thereby raise money for his [Sanger's] use."

It is claimed in this assignment that such issue should not have been submitted to the jury, because the deeds were general warranty deeds, and their construction was a question of law for the court, and it was error to submit to the jury the question of a parol understanding that would vary the effect of the written instruments, and further because it was not alleged that the deeds were obtained by fraud, accident, or mistake.

[8] We are of the opinion that the issue submitted was the main issue raised by the pleadings, and this special issue embraced one of fact, namely, the intention of the parties in the execution of the deeds, and the consideration therefor, from which the true construction and effect of the deeds might be determined by the court. It did not submit a question of law to the jury, as contended by appellant. The authorities last above cited, we think, sustain our conclusion on this point, and the fourth assignment is overruled.

Appellant's fifth assignment of error presents the point that the trial court erred in sustaining appellee's motion for judgment on the verdict, and in entering judgment for appellee thereon, because the evidence shows:

(a) That the deeds in question were executed in settlement or satisfaction of the then existing indebtedness between Futch and Sanger.

(b) That they were executed by Futch in order to obtain further credit for further future dealings on the New York Cotton Exchange, through Kahn & Ettelson.

(c) Because, even under Futch's testimony, the deeds in question were executed in order that Sanger might have credit and funds in New York with which to have future cotton future transactions or dealings, with Futch's knowledge.

(d) Because the evidence shows, and the jury found, that Sanger furnished credit to Futch to the amount and extent of $3,171.69, up to November 19, 1912, for his cotton future dealings, and that in order for Sanger to be reimbursed or paid, or get money to pay, such losses, the deeds in question were executed by Futch, and with the further understanding that Sanger was to furnish Futch additional credit; and the evidence shows that the credit, to the amount and extent of in excess of $1,000, was furnished Futch by Sanger after the execution and delivery of said deeds, and that said sum was consumed by Futch in his cotton future dealings.

(e) Because there was no evidence that Sanger agreed at any time to reconvey the property to Futch, except upon payment of an amount equal to the sum he had advanced to Futch.

The statement by appellant under his second assignment of error in the brief contains a very full statement of the evidence relied upon by appellant to sustain this assignment. It will be remembered that the jury, in answer to special issues Nos. 1 and 2, found that the deeds were executed by appellee upon the understanding and agreement with appellant that they were executed merely for his accommodation, and that they were not executed in settlement or satisfaction of the indebtedness owing by appellee to appellant on account of losses in cotton future dealings between them.

By their answer to special issue No. 1, re-

quested by plaintiff, the jury further found that at the time the deeds were executed it was understood between the parties that the title to the property was to vest in appellant merely for the purpose of enabling appellant to raise money for his own use.

As we have before stated, under our statute the trial court, in a special issue case, shall, unless the verdict be set aside and a new trial granted, render judgment thereon. These were the main issues in the case, and we have heretofore held that the plaintiff's petition, alleging the facts sustained by these findings, showed a good cause of action. Therefore we must hold that they were properly submitted to the jury, and that the trial court properly entered judgment thereon for appellee, unless the findings are without evidence to support them.

We have carefully examined the statement of the evidence made by appellant, as well as all the evidence shown by the statement of facts, and we do not believe that these findings and the judgment thereon are without support in the evidence. These issues were sharply controverted in the evidence, and there was testimony tending to support either theory of the case; but the jury made findings which support the theory of appellee that the deeds were not based upon illegal considerations or unlawful contracts or transactions, and that they were executed merely for the accommodation of appellant, with no intention of passing the complete legal title. There is evidence further tending to show that no possession was delivered, or was intended to be delivered, under the deeds.

[9] It follows from the above conclusions that the court did not err in sustaining appellee's motion for judgment on the verdict, nor in entering judgment for appellee thereon, and the fifth assignment of error is therefore overruled.

The sixth and last assignment of error in appellant's brief assigns as error the action of the trial court in failing to enter judgment in favor of appellant for $4,247.69, upon his cross-action, and for foreclosure of lien upon the property in controversy, because the uncontradicted evidence shows that appellant advanced appellee said sum, that he was not interested in appellee's illegal transactions, and that the evidence does not show that, in appellee's purchases or sales on the New York Exchange, actual delivery of the cotton was not contemplated.

[10] It would perhaps be a sufficient answer to this assignment to say that the jury made no finding of the amount specified therein, nor any special finding in favor of the lien attempted to be created by the deed of trust, and, appellant having requested no such finding, it will be presumed on appeal, in support of the judgment, that the trial court found against the validity of the lien.

[11] Further that, by the averments of appellee's supplemental petition, he made the issue, in reply to appellant's cross-action, that the consideration for the deed of trust had failed, and this issue not having been submitted to the jury, and appellant not having requested a finding thereon by the jury, it will be presumed on appeal that the trial court found against appellant on this issue.

But there is at least another answer to be made. In appellee's brief we find the following counter proposition under the sixth assignment of error:

"The notes by Futch to Sanger, secured by the execution of the deed of trust having been used by Futch in furtherance of his cotton future transactions with Sanger, with Sanger's knowledge, and while Sanger was acting as the agent of Kahn & Ettelson, and actively participating in such transactions, it was proper for the court to refuse to enter judgment in favor of Sanger on his cross-action foreclosing the lien."

[12] We think this proposition is sound and should be sustained. In answer to special issue No. 3, requested by the appellee, the jury found that the $2,000 secured by the deed of trust was used by appellee in furtherance of his cotton future transactions with appellant, with the knowledge of appellant. The jury also found, in answering special issue No. 2, requested by appellee, that appellant acted as agent for Kahn & Ettelson in the sale of the cotton futures purchased by appellee, on account of which the indebtedness of appellee to appellant was incurred. Appellant had made no direct attack upon either of these findings, as unsupported by the evidence, in any assignment in his brief, and they are conclusive on the facts found as against the parties; but, in addition, we think the facts in the record sustain these findings.

It is impossible to read this record without concluding that part, at least, of the money to be raised by appellee by the execution of the deed of trust was to be used for illegal cotton future contracts, with the knowledge of appellant, and that he aided appellee in such unlawful purpose, and actively participated therein, even to the extent of thereafter paying appellee's losses to the New York brokers with whom the contracts were placed. Appellant transmitted or caused to be transmitted to New York for appellee telegrams giving the orders for the future contracts, used or allowed appellee to use his name in the transactions, and his credit in protecting the margins, and even paid the entire losses of appellee. The undisputed evidence is that the $500 note secured by the deed of trust was for the purpose of enabling appellee to raise money to buy cotton contracts. These future transactions began on the very day the deed of trust was executed, as shown by statement No. 105 in the state-

ment of facts, and continued for months. How the appellant himself viewed these transactions is reflected by his own testimony, from page 52 of the statement of facts, as follows:

"I paid Kahn & Ettelson for Futch's personal losses about $4,150. I have got my books here to show it. It was paid by sending exchange to Kahn & Ettelson at various times. I not only sent money to Kahn & Ettelson for Futch's account only, but I. sent money for my own account. *I was speculating myself, too, you know.*"

For the reasons above given, we think the above-quoted counter proposition of appellee under the sixth assignment of error must be sustained.

Appellee in his brief makes still another counter proposition under the sixth assignment of error, as follows:

"The fact that the deed of trust from Futch to Sanger and the three $500 guaranties from Sanger to Futch at the time of their execution may have been executed for a lawful consideration; but, no money having passed between them as consideration for the execution of the deed of trust, these guaranties and deed of trust did not become effective until the delivery of the guaranties by Futch to Sanger, and the evidence showed that they were delivered by Futch to Sanger in settlement of cotton future transactions between them; therefore at that time the deed of trust and guaranties became a part of the illegal transaction."

[13] We think this counter proposition is correct, and contains another good reason why the trial court did not err in refusing to enter judgment in favor of appellant on his cross-action and foreclosing his lien. The sixth assignment of error is overruled.

This disposes of all the assignments of error in the brief of appellant; and, finding no reversible error in the record, the judgment of the court below is affirmed.

. Affirmed.

---

⊕⊶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes