GILLETTE–HERZOG MANUFACTURING COMPANY v. BOARD OF
COUNTY COMMISSIONERS OF AITKIN COUNTY.[1]

| | 69 | 297 |
|---|---|---|
| | 85 | 301 |

August 12, 1897.

Nos. 10,502—(135).

Claim against County—Verification—Agent.

B., as the agent of and in behalf of plaintiff herein, a corporation, entered into a written contract with defendant board for the construction of an iron bridge, with approaches, on a county road. B. supervised the work, and defendant board accepted it from him as agent when completed. He was the only person with whom the board dealt, and was in fact a shareholder in the corporation, and its agent. *Held*, in view of all these circumstances, it was not necessary for B. to state in his verification of plaintiff's claim or account, presented to the board under G. S. 1894, § 687, that he was plaintiff's agent.

County—Bridge Contract—Advertising for Bids.

It is not required by statute, when letting a contract of the character before mentioned, that the board of county commissioners advertise for bids, or that the contract be let to the lowest bidder. G. S. 1894, §§ 1894–1902, have no application to such a case.

Same—Width of Bridge—G. S. 1894, § 1851.

Where a bridge is built across a stream, upon a public road, more than three feet above the level of the bank upon either side of such stream, G. S. 1894, § 1851, requires such bridge with its approaches to be at least 16 feet wide. *Held*, that this requirement in respect to the width of the bridge is observed when, from the evidence, it appears that between the trusses, the innermost projecting parts of the superstructure, the distance is 16 feet, although it also appears that wheel guards, 4 inches wide and 6 inches high, are laid upon the flooring, and encroach on the 16 feet.

Same—Power of Commissioners—Ratification by Vote of People.

G. S. 1894, § 1846, limits and restricts the power of the board of county commissioners to appropriate or expend money upon public roads in excess of a specified sum or ratio of the assessed valuation of real estate in the county, unless such expenditure is ratified by a vote of the people. *Held*, assuming that the limitation and restriction has not been modified or removed by Laws 1895, cc. 287, 289, or 297,—and on this no opinion is expressed,—that the defendant board had no authority to enter into the contract in question, and no power to expend the money needed on ac-

[1] Reported in 72 N. W. 123.

count of the same, unless, by vote of the electors of the county, such authority and power had been conferred.

## Same—Ultra Vires.

The contract was not ultra vires, however, and, if either of the statutes before referred to had been complied with, the authority and power existed.

## Same—Presumption that Public Officials Obey the Law.

While acting within the scope of their official duties, upon any subject-matter over which they have control and are empowered to act, the presumption is that public officials obey the law when entering into contracts, and that they do not act in a different mode from that prescribed. So all contracts made by public officials, if within the scope of their power and authority, are presumed to be made in view of and in conformity with the law making them valid.

## Same—Burden of Proof to Show Official Misconduct.

*Held,* on the trial of an appeal from the allowance by defendant board of a balance due upon such a contract, the answer alleging that the same and the expenditure of the required money was never authorized or ratified by a vote of the electors, that the burden of proof was on defendant board to show that it was guilty of official misconduct when it entered into the contract, and that the same and the expenditure had not received the sanction of the voters.

Action in the district court for Aitkin county to recover the contract price of building a bridge across the Mississippi river at Aitkin. A written contract was entered into between the parties in November, 1895. The consideration agreed to be paid was $9,154, of which one-half was to be paid when the material was on the ground, and the other half when the bridge was completed. The bridge was completed and accepted by appellant in writing on April 8, 1896, and at once opened for public travel, and has ever since been so used. Of the contract price $4,500 was actually paid some time during the early part of 1896, and on April 8, 1896, one bill for the remainder of the contract price, together with a second bill for the sum of $349.05 alleged to be for extras furnished for the completion of the bridge, were presented and allowed. Shortly after the allowance of these bills by the county commissioners, nine of the taxpayers of the county of Aitkin served a written request upon the county attorney of that county, demanding and requesting that he appeal from the allowance of the bills to the district court

for the county. This was accordingly done by the county attorney, and the records of the auditor's office were duly certified by the county auditor to the district court.

At the opening of the term of court in October, 1896, pleadings were filed by both parties; and the defendant demurred to plaintiff's complaint, which demurrer was overruled and exception duly taken, and defendant filed its answer. The cause was tried before Holland, J., and a jury, and when defendant rested the jury was directed to bring a verdict for the plaintiff for the amount demanded in the complaint. From the judgment entered upon the verdict, defendant appealed. Affirmed.

*F. W. Hall*, County Attorney, *John Rustgard* and *A. Y. Merrill*, Special Assistant County Attorneys, for appellant.

The board had no authority to enter into the contract, without first submitting the question of building the bridge to a vote of the people. G. S. 1894, § 1846; Laws 1895, cc. 287, 289, 297; Nash v. City, 11 Minn. 110 (174); Starin v. Town, 23 N. Y. 439. The contract could be legally let only after bids had been advertised for. G. S. 1894, § 1900. It is well settled that where the law provides that no contract shall be let unless bids have been duly advertised for, a contract entered into without such proceedings is absolutely void, and no recovery can be had for any performance under it. Townsend v. Holt, 40 Neb. 852; Dillon, Mun. Corp. §§ 458, 466; Nash v. City, 11 Minn. 110 (174); Newbery v. Fox, 37 Minn. 141; Bonesteel v. Mayor, 22 N. Y. 162; Dickinson v. City, 75 N. Y. 65; Burrill v. City, 2 Clifford, 590; McDonald v. Mayor, 68 N. Y. 23; Heidelburg v. St. Francois, 100 Mo. 69.

The bridge is illegal because less than 16 feet wide, as required by G. S. 1894, § 1851. The bridge is not built according to the contract which provides for a roadway 16 feet clear width. The roadway on the bridge as built is only 14 feet wide. Where the defect runs through the work and cannot easily be remedied, or where it is not due to mistake, but has been done purposely, no recovery can be had. Elliott v. Caldwell, 43 Minn. 357; Smith v. Brady, 17 N. Y. 173; Woodward v. Fuller, 80 N. Y. 312; Leeds v. Little, 42 Minn. 414; Madden v. Oestrich, 46 Minn. 538.

*Koon, Whelan & Bennett, Lewis Brownell* and *Geo. P. Douglass,* for respondent.

It was not necessary for plaintiff to allege and prove that the building of the bridge and the contract in question had been passed upon and authorized by a vote of the people of the county. There is no presumption that a contract entered into by the board of county commissioners relating to a subject upon which they have general authority, and pertaining to a duty with which they are charged by law, is illegal or without authority. On the contrary, every presumption relating to such contract is that it is legal and authorized, and ordinarily a person contracting with them in relation to such a matter in good faith is protected. Certainly the burden would not be cast upon him of showing, in the first instance, extraneous acts necessary to make the contract legal. Herman, Est. §§ 1221–1235; Dillon, Mun. Corp. §§ 444–452, 526; Town v. Murdock, 92 U. S. 494; Folsom v. County, 28 Minn. 324; 1 Estee, Pl. § 401; Gelpcke v. City, 1 Wall. 175, 221; 2 Beach, Pub. Corp. § 795; Noble v. Washington, 4 Ind. App. 270; Bigelow, Est. (3d Ed.) 466, 467; Dubuque v. District, 13 Iowa, 555.

The bridge was not only built with the knowledge and acquiescence of everyone interested, but during its progress one-half of the agreed price was paid therefor, and at its completion the bridge was formally and publicly accepted, taken possession of by the county of Aitkin, and has ever since been used and is now being used and enjoyed by it. We can conceive of no reason why it should not be paid for. If the doctrine of estoppel should ever be applied to prevent a public municipal corporation from doing an injustice or taking advantage of its own wrong, it would seem to us, if there is any necessity for the application of the doctrine in this case, that it is an eminently proper case for its application. Bigelow, Est. (3d Ed.) 466–468; Maher v. City, 38 Ill. 267; Herman, Est. §§ 1221–1223, 1225, 1229–1235, 1238; Town v. Murdock, supra; 2 Beach, Pub. Corp. § 795; Gelpcke v. City, supra.

As to whether the contract was void because bids therefor were not advertised or posted before the letting of the contract, we assert without hesitation, and after most careful examination, that there is no law of this state requiring bids to be adver-

tised for, or notices therefor to be posted, prior to the letting of the contract. That where there is such a positive requirement of law, a contract let in violation of it is illegal, we do not deny. But in order to render such contract illegal, void, or even voidable, for that reason, there must be a positive provision of law making the advertising or posting of notices a prerequisite to the letting of the contract. Elliot v. Minneapolis, 59 Minn. 111.

As to the width of the bridge, the statute requires that the structure itself,—the bridge which constitutes the entire structure, and the approaches which constitute the entire surface of the bridge, —shall be 16 feet wide. What portion of the bridge is to be used for teams exclusively; what portion is set apart or portioned off for foot passengers; what portion, if any, occupied by a protecting hand-rail or by wheel-guards, is left to the discretion, judgment or taste of the authorities having in charge the erection and maintenance of the bridge; but the structure itself and the approaches thereto, as a whole, must be of the width required by statute.

COLLINS, J.

The first point urged by defendant's counsel is that plaintiff's claims or accounts were not verified in accordance with the provisions of G. S. 1894, § 687, when presented to and acted upon by defendant board, the exact point being that it was not stated in or shown by the written verifications that Bayne, who made them, was plaintiff's agent at the time. The statute requires the verification to be made by the party in whose favor the claim or account is presented, or by his agent. Here the verification was made by Bayne, who, in behalf of plaintiff, and as its agent, entered into the written contract with defendant board, said contract being on file, and in the possession of the clerk of the board, from the time it was executed, and consequently when the accounts were presented. It was then part of the accounts, for reference would necessarily have to be made to it. Bayne also supervised the construction and completion of the bridge as plaintiff's representative and agent, and when defendant board accepted it as completed it was accepted from Bayne. He was the only person with whom the board dealt from first to last, and in fact was a shareholder in plaintiff corporation, as well as its agent. In the case of West v. Berg, 66 Minn.

287, 68 N. W. 1077, it was held that an affidavit for a writ of attachment in justice's court, made by a person other than the plaintiff, is sufficient where it appears from the files and records in the action that it was made in plaintiff's behalf, although not so stated in the affidavit. The verifications were sufficient.

The next point made is that the contract was not legally entered into, because no bids for the construction of the bridge were advertised for. This defense was set up in the answer, together with charges of fraud upon the county, and collusion between plaintiff and defendant board, whereby the contract in question was entered into for the purpose of cheating and defrauding the county out of about $3,000. On the trial it did not appear whether bids were advertised for or received prior to the letting of the contract, and no attempt was made to establish the allegations of its own bad conduct and fraudulent acts which the defendant board inserted in its answer. On the argument here its counsel seems to assume—First, that the board was imperatively required to advertise for bids, and then to award the contract to the lowest bidder; and, second, that it was incumbent upon the plaintiff to show compliance with the requirement in respect to advertising, and, further, that it was such lowest bidder. We have not been cited to any law which requires that bids be called for when road work is to be done, except the act of 1867 (G. S. 1894, §§ 1894–1902, inclusive). A glance at that statute will show that it is not in point here. And, even if it were incumbent upon the board to advertise for bids when a road or bridge contract is to be let, and then to enter into a contract with the lowest bidder, the presumption would be that the law had been complied with by the board; not that its members had violated the statutory provisions. This contention is without merit for either of these reasons.

It is also argued that plaintiff cannot recover because the bridge was built in violation of G. S. 1894, § 1851; and also that the contract itself as to the width of the bridge was not complied with. It was stipulated in the contract that the bridge should be built in accordance with attached plans and specifications and to have "one roadway 16 feet clear width," and in the answer it was alleged that the one in question, although more than three feet above the level of

the bank on either side of the river, was, with its approaches, no more than 14 feet wide. The evidence was conclusive that the approaches were slightly more than 16 feet wide, and that between the trusses the bridge itself was at least 16 feet. The superstructure was of iron, plank being used for flooring. The approaches were piling, with cross beams of wood, upon which were plank floors. For safety, hand rails had necessarily been placed upon each side of the approaches, and to protect these rails and the iron trusses, which were the innermost projecting parts of the superstructure, wheel guards about four inches wide and six inches high were laid upon the flooring. These guards simply served the purpose of preventing wheel hubs from coming in contact with hand rails and trusses, and in no manner reduced the width of the roadway. The expert as well as nonexpert testimony was conclusive that the plans and specifications had been followed, and that in respect to the width of the roadway the contract had been complied with. This fact disposes of the contention that the statute had been violated, even if we should construe the language as meaning that the inside width of bridges should in some cases be 14 feet and in others 16 feet. We express no opinion as to what should be the construction of these provisions. In terms, the statute does not specify whether the width prescribed for bridges shall be inside or outside measurements, although it is explicit enough as to approaches.

The answer, as finally amended, admitted the execution of the contract by defendant board, and then, among other things, alleged that at no time had the assessed valuation of the county exceeded the sum of $815,015; that the expenditure in question of $9,154 had never been submitted to a vote in the county, and had never been authorized or ratified by the voters therein. The claim is that the defendant board had no authority to enter into a contract for the building of this bridge, and consequently payment therefor cannot be enforced. This contention is really based upon G. S. 1894, § 1846, which limits and restrains the power of county commissioners in the matter of appropriating money for county roads, except as appropriations in excess of the specified sum or ratio of the assessed valuation of real estate in the county may be ratified by a vote of the people. It is manifest that without a vote of the

people an appropriation and expenditure for the bridge in question of over $9,000, with a total assessed valuation of $815,015, were unwarranted and illegal. If this statute be controlling, the defendant board exceeded its authority when it entered into this contract, and of this plaintiff would be bound to take notice.

Our attention has not been drawn to any statute which modifies section 1846, or removes the restriction imposed upon the county commissioners, unless this was accomplished through some of the enactments at the 1895 legislative session. By Laws 1895, c. 287, it was enacted that the commissioners of each county should establish or provide a fund for the construction, maintenance, and repair of roads and bridges in their respective counties, to be known as "the general road and bridge fund," and on this fund all warrants for money expended upon county or town roads and bridges were to be drawn. Prior to the passage of this law such fund was generally created in each county under the provisions of G. S. 1894, § 1558, the supposed necessary amount being included in the sum levied for county purposes. Provision was made in chapter 287, Laws 1895, for including in each tax levy a tax not exceeding one mill on the dollar of the taxable valuation of the county to constitute this fund, and there was no express prohibition upon the boards in respect to the amount of their appropriations, except as to town roads or bridges. By Laws 1895, c. 289, these boards were authorized and empowered to issue county bonds in an amount not exceeding one per cent. of the assessed valuation for the purpose of constructing free wagon roads and bridges "wherever such road or bridge may be deemed necessary" upon a vote of the electors of the county. Probably a fair construction of the above-quoted language is that the electors could vote upon the question of issuing bonds for the construction of one or more specified and designated roads or bridges, and, if so voted, the board of county commissioners would be empowered to proceed without further action of the electors. Further steps were taken that same year (Laws 1895, c. 297) whereby county commissioners were authorized to submit to a vote of the electors a proposition to issue bonds for the purpose of constructing or repairing roads or bridges, or for other purposes. Bonds to be issued under this act could not exceed in amount two

per cent. of the assessed valuation. There are no express provisions in either of these chapters 289 and 297 which limit or restrict the power of the county commissioners in regard to the amounts which may be appropriated or expended in any one year out of the funds realized by the issuance and sale of bonds.

Plaintiff's counsel take the position that under either or any one of these 1895 laws it should be held that the prohibition found in section 1846, supra, has been repealed, and that there is now no restriction upon the commissioners as to their power to appropriate and expend the moneys which come into the county treasuries, known as "the general road and bridge fund." We do not find ourselves compelled to express an opinion upon this question.

It will be seen from the foregoing statement that in either of several ways could the money to be appropriated and expended in the construction of this bridge have been on hand in the county treasury when the contract was entered into; and, further, that in more than one way could the defendant board have been authorized and empowered to execute the contract, to build the bridge, to allow plaintiff's bill, and to pay the same in full. It is not a case where the acts of the board are or were ultra vires, but it is one where the board could have been given the authority to expend money in building the bridge already in the county treasury, or to expend that to be raised by the issuance and sale of county bonds for the construction of the bridge. If either of these statutes had been complied with, and conceding that the prohibition found in section 1846 is still controlling, the defendant board could have been empowered to enter into the contract, to cause the work to be done, to allow the bills, and to issue warrants for their payment.

So the main question on this point is one of the burden of proof. Although defendant board, in its answer, alleged affirmatively that it was not authorized to enter into the contract, and had not been empowered by a vote of the electors to build the bridge or to expend the money, no proof was offered upon this allegation. So that, when the testimony was closed, and the motion was made and allowed whereby the jury, as instructed by the court, returned a verdict for plaintiff, there was an entire absence of testimony upon this allegation. If, therefore, the burden of proof rested upon the

defendant board to sustain this defense, the court was right in its instruction.

We have heretofore referred to the presumption that public officers do their duty while acting officially; that is, the presumption operates in favor of the regularity and validity of official acts. While acting within the scope of their official duties, upon any subject-matter over which they have control and are empowered to act, the presumption is that they do not exceed their authority. They are not presumed to disregard the law, or to exercise their power and authority in opposition to it, to act officially in a different mode from that prescribed. If upon them is conferred the power to enter into a contract in respect to any matter of a public character, although the power to act depends upon the existence of some preliminary fact, it must be presumed, if the contract is made, that the fact existed. Or, to put it in another form of words, all contracts made by public officials, if within the scope of their power and authority, are presumed to be made in view of and in conformity with the law making them valid. As the execution of the contract stood admitted by the answer, and the power and authority to make it under certain circumstances were with the defendant board, the admission included and implied that these circumstances existed, and that the board was not guilty of official misconduct. It follows that the burden rested upon defendant to show its want of power to make the contract and to expend the money involved.

No other question needs consideration.

Judgment affirmed.