We approve the holding of the Commission of Appeals on the question discussed in its opinion.

---

## POTTER COUNTY v. C. C. SLAUGHTER CATTLE CO. (No. 397-3736.)

(Commission of Appeals of Texas, Section B. Oct. 10, 1923.)

**1. Public lands ⬅173(14)—Counties are trustees for benefit of schools.**

Under Const. art. 7, § 6, the counties are trustees of school lands for the benefit of the state schools, and, as such trustees, their powers must be strictly construed, and they may neither divest themselves of the powers conferred nor assume powers not conferred.

**2. Public lands ⬅173(14)—County without power to execute option to purchase school land in future; "sell and dispose of lands."**

The county's power "to sell or dispose of its lands" under Const. art. 7, § 6, does not include the power to make a contract granting an exclusive option to purchase its lands at any future time, in view of article 5, § 18.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sell and dispose of.]

**3. Public lands ⬅173(14)—County's option agreement concerning school lands void, but not against public policy.**

An optional sale agreement by county concerning school lands being not within the power of the county to execute, under Const. art. 7, § 6, was void for want of power in the parties to create, but was not malum prohibitum or malum in se, nor void because contrary to public policy.

**4. Public lands ⬅173(14)—Instrument held contract of sale and not option.**

An agreement between a county and another, concerning school lands, providing for re-entry and forfeiture, unless a certain sum was paid on or before 20 years, *held* a contract of sale, and not option to purchase, under Const. art. 7, § 6.

**5. Public lands ⬅173(14)—Void option agreement, held not to render subsequent contract invalid.**

A contract of sale of school lands by a county was not invalid because preceded by an option, which was void because beyond the power of the county to execute, notwithstanding a recitation that it was ordered made and delivered under and by virtue of the option, it being clear that the option was not the controlling consideration for the sale, under Const. art. 7, § 6.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by Potter County against the C. C. Slaughter Cattle Company. From a judgment of the Court of Civil Appeals (235 S. W. 295), reversing a judgment for it, the plaintiff brings error. Affirmed.

H. G. Hendricks, of Amarillo, Percy Spencer, of Lubbock, and P. F. Sapp, of Amarillo, for plaintiff in error.

W. H. Bledsoe, of Lubbock, and W. H. Flippen, M. D. Gano, and Coke & Coke, all of Dallas, for defendant in error.

HAMILTON, J. On November 8, 1897, the county judge of Potter county, in conformity with an order of the commissioners' court of that county previously made, executed on behalf of the county an instrument purporting to be a contract of sale to R. S. Ferrell of an option to purchase from Potter county 17,712 acres of school land situated in Cochran county.

On July 1, 1898, Potter county, through its judge, acting in obedience to an order of the commissioners' court, executed a contract of sale of the land itself to Ferrell in language as follows:

"The State of Texas, County of Potter.

"Know all men by these presents, that this contract of sale, made and entered into this the first (1st) day of July A. D. 1898, by and between the county of Potter, state of Texas, acting by and through her county judge, Lon D. Marrs, by virtue of an order of the commissioners' court of said Potter county, Tex., on the first (1st) day of July, A. D. 1898, of which the following is a copy, and duly entered in the minutes of Commissioners' Court, in Book 2, page 212: 'July 1, 1898. Court met pursuant to adjournment and all officials of said court present, and the following proceedings were had, to wit: It is ordered by the commissioners' court of Potter county that Lon D. Marrs, county judge of said county, be authorized and instructed to make and deliver to R. S. Ferrell a bond for title of Potter county school lands situated in Cochran county, Tex., under and by virtue of an option of purchase said Ferrell has with Potter county, Tex., under an order of this court, said order being on record on page 153, Book 2. The bond for title to be delivered to the said Ferrell when the first payment is made on said land said bond for title shall be placed on record in the clerk's office of Potter county, Tex. No commission to be paid for the sale of said lands.' Said vendor is hereinafter styled party of the first part, and R. S. Ferrell, of the county of Tarrant, and state of Texas, hereinafter styled party of the second part.

"Witnesseth: For the considerations hereinafter named, the party of the first part, by the terms hereof, contracts the sale of the lands belonging to the school fund of said Potter county, Tex., situated in Cochran county, Tex., to the party of the second part, the same being known and described as school leagues, Nos. one hundred and thirteen (113), one hundred and fourteen (114), one hundred and fifteen (115) and one hundred and sixteen (116), each of four thousand four hundred and twenty-eight (4,428) acres, aggregating in all

seventeen thousand seven hundred and twelve (17,712) acres of land, for the sum of thirteen thousand two hundred and eighty-four ($13,284) dollars, to be paid as follows, to wit: The sum of thirteen thousand two hundred and eighty-four ($13,284) dollars, or any part thereof, to be paid on or before twenty (20) years, after date of this contract, with interest at the rate of five (5%) per cent. per annum, interest payable semiannually in advance, on or before the first day of July A. D. 1898, in the sum of three hundred and thirty-two and 10/100 ($332.10) dollars, and three hundred and thirty-two and 10/100 ($332.10) dollars, on or before the 1st day of January, A. D. 1899, and three hundred and thirty-two and 10/100 ($332.10) dollars on or before the 1st day of each succeeding July and January. Said interest shall be paid the county treasurer of said Potter county, at the county seat of said Potter county, Tex. Said interest in full shall be paid, unless said party of the second part or his legal heirs or assigns, has paid part of said principal as herein contracted, in which event said five (5%) per cent. per annum shall be calculated upon the amount remaining unpaid, and any principal paid hereon shall be paid upon some interest paying date. And it is specially provided that should the party of the second part or his legal heirs or assigns fail or refuse, for sixty (60) days after any semiannual interest becomes due, to pay the same, then this obligation to become null and void, and of no binding force and effect on either party hereto, and all improvements and appurtenances situated upon said premises shall then become the property of said Potter county, Tex., or her legal assigns, and the party of the second part hereby agrees and binds himself and his heirs and assigns to quit and surrender said premises, together with all improvements and appurtenances situated thereon, and the party of the first part may re-enter and take possession of said premises, and hold as in her former estate, and thereupon this contract of sale, and everything herein contained, shall cease and be null and void, and all claims for damages by reason of such re-entry being hereby expressly waived, and the party of the first part shall have no rights hereunder for a specific performance hereof. And it is expressly understood and agreed, by and between the parties hereto, that said party of the second part and his legal assigns shall be responsible (should this contract be forfeited) to the party of the first part for the time said premises may be held or occupied after such forfeiture. And the said party of the second part hereby obligates and binds himself, his heirs and assigns not to remove or cause to be removed any improvements now upon said premises or that may hereafter be placed thereon.

"To have and to hold the above described premises, together with all and singular, the rights and appurtenances thereto in any wise belonging, unto the party of the second part, his heirs, and assigns forever; when the whole of said principal and interest has been fully paid. The said party of the first part agrees and binds said Potter county, himself and successors in office, to make good and valid fee-simple title to above and foregoing described lands to second party or his legal heirs or assigns, and warrant and forever defend all and singular the said premises unto the said party of the second part, his heirs, and assigns, against all persons lawfully claiming or to claim the same or any part thereof.

"In testimony whereof witness my hand in the capacity and office as herein stated at Amarillo, Potter county, Tex., This the 25th day of July A. D. 1898. [Signed] Lon D. Marrs, County Judge of Potter County, Texas."

(Acknowledged in statutory form.)

On July 27, 1898, Ferrell bargained, sold, and conveyed, granted and quitclaimed to C. C. Slaughter all his right, title and claim to the land described in the above contract of sale. Slaughter assumed and discharged all the obligations stipulated in the contract of sale, paid all the consideration therein named, and, on February 18, 1908, Potter county executed a deed conveying the land to Slaughter.

On February 24, 1902, Slaughter conveyed the land to C. C. Slaughter Cattle Company by deed never recorded. On January 22, 1910, Slaughter executed a new deed "to take the place of said original deed," to C. C. Slaughter Cattle Company.

On September 25, 1918, Potter county filed its original petition complaining of R. S. Ferrell, C. C. Slaughter, and C. C. Slaughter Cattle Company, a corporation. On July 26, 1920, plaintiff filed its first amended original petition consisting of three counts and dismissing Ferrell and Slaughter as defendants. The first count contains the allegations of an ordinary petition in trespass to try title. The second count alleges that Ferrell's option above quoted was in violation of the directions and provisions of the Constitution and statutes of Texas, and in contravention of the public policy of the state, relative to the sale and disposition of county school lands, and was beyond the authority and power of the commissioners' court to make, and was wholly void and ineffectual; that the order of the commissioners' court purporting to grant a bond for title, as the sales contract is called, made and entered into on July 1, 1898, as shown above, was based upon the provisions of the void option, and was made in pursuance thereof; that the bond for title executed by the county judge of Potter county, on July 25, 1898, in favor of R. S. Ferrell, and the deed attempted to be authorized by the commissioners' court, to C. C. Slaughter, were based on the void option as the controlling and dominant consideration for the execution and delivery of the deed, and was an attempt on the part of the commissioners' court to convey county school lands in pursuance and consummation of the void option; that no title, legal or equitable, by virtue of the option, contract of sale, or the deed, was divested out of Potter county or passed into the grantees named therein; and that the title to all the land remained in Potter county; that the contract of sale was a mere option, without enforceable promise moving to said county, to purchase the land from Potter county, at any time within 20

years from the date thereof; that it was never executed by R. S. Ferrell, nor was any note or other obligation or contract signed by him or delivered to the county for the purchase money mentioned in the same; "that said purported contract (not a contract of sale) was lacking in mutuality and was in contravention of the Constitution and laws and of the public policy of the state of Texas" relative to the sale and disposition of county school lands; and that the orders of the commissioners' court based thereon, authorizing the deed to Slaughter, were wholly void and ineffectual, and that the deed made in pursuance of these orders passed no title from the county.

The third count alleges that, if the plaintiff is mistaken in the second count of its petition, then "the option orders and the option contract and all instruments and orders in pursuance thereof should be rescinded and canceled for inadequacy of consideration"; that Ferrell and Slaughter were upon notice that the consideration was insufficient and inadequate and such as to shock the conscience of an ordinary man; alleges the value of the use of the land and asks that such value be offset in equity against the principal and interest paid by C. C. Slaughter for the land, and that the plaintiff have judgment for any balance in its favor for such use and occupancy.

No fraud is alleged, and no wrongful motive is charged in the pleadings. It was agreed by the parties, upon the trial of the case, that the value of the land stipulated in the contract of sale was its actual value at that time—75 cents per acre.

Upon the conclusion of the evidence, the court instructed the jury to find for the plaintiff. Upon the instructed findings, the court entered judgment that Potter county recover all the land, and that, upon the pleadings of the plaintiff praying for an offset of the rental value of the land against the principal and interest paid by Slaughter, the Slaughter Cattle Company recover against Potter county a balance of $15,469.83, with interest from the 16th day of December, 1920, and establishing a lien on the land to secure the payment of that sum to C. C. Slaughter Cattle Company.

The defendant appealed, and the Court of Civil Appeals in a majority opinion (Chief Justice Hall vigorously dissenting) reversed the judgment of the trial court, and rendered judgment that the county take nothing by its suit. The opinion of the Court of Civil Appeals sets out the facts in detail. 235 S. W. 295. The case is here, at the instance of the county, on writ of error.

Article 7, § 6, of the Constitution of Texas, in part, follows:

"All lands heretofore or hereafter granted to the several counties of this state for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties. * * * Each county may sell or dispose of its lands, in whole or in part, in manner to be provided by the commissioners' court of the county. * * * Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein. * * *"

[1-3] The counties are granted power by the Constitution "to sell or dispose of its lands." The county is trustee for the state. The schools are the institutions of the state established in the counties, and, as a part of the state's governmental policy, maintained in part from taxes and other fund directly furnished by the state, and in part from interest on the funds realized from the lands intrusted by the state to the management of the commissioners' courts of the counties as instrumentalities in executing said policy. The counties are thus trustees for the benefit of the state schools. Webb County v. School Trustees, 95 Tex. 131, 139, 65 S. W. 878; Delta County v. Blackburn, 100 Tex. 51, 58, 93 S. W. 419. As such trustees their powers must be strictly construed. They may neither divest themselves of the powers conferred nor assume powers not conferred. Commissioners' courts shall "exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the state or as may be hereafter prescribed." Article 5, section 18, Constitution of Texas, Mills County v. Lampasas County, 90 Tex. 603, 40 S. W. 403; Bland v. Orr, 90 Tex. 492, 39 S. W. 558; Baldwin v. Travis County, 39 Tex. Civ. App. 431, 88 S. W. 484. Neither the Constitution nor the statutes of Texas confers power upon the counties to do more than "sell or dispose of its lands." The county's power "to sell or dispose of its lands" does not include the power to make a contract conferring upon the other party an exclusive right to purchase its lands at any future time. The option agreement with Ferrell was totally beyond the power of the county to make. No law prohibits such a contract; no statute attaches a penalty to the making of such a contract. It was neither malum prohibitum nor malum in se. No law prohibits it; it was not evil in itself; it was simply beyond the power of the county to make and, therefore, was void. It was a mere scrap of paper. Independent of any question of public policy, it never existed as a contract. There was never any power to execute it—to give it vitality. Its life and vitality are not thwarted and choked out by public policy because it never had life and vitality. It cannot be that an agreement void for want of power in the parties to create any obligation by virtue of such agreement is void because contrary to public policy. Since it was void from its incipiency, it never had a binding effect independent of law or public policy;

it could not have a tendency to be injurious to the public good; it had no tendency toward anything. It was impotent. It was as if no writing had ever been made. It did not conflict with the public good. It was nothing. Such an agreement is no contract whatever, and the acts of the parties in an effort to create one in nowise brings about a change in their legal status or in that of the subject-matter. It creats no rights; it imposes no duties; it entails no obligations. The parties and the subject-matter of the agreement remain in all respects just as they were before any act was performed in relation thereto. When the writing purporting to give an option was made, both parties knew, and they are held to have known, that it created no change in their relation to each other and none in their respective rights and relations to the county school land of Potter county.

[4] Independently of the option agreement just discussed, it is contended that the contract of sale, called a bond for title, between Potter county and Ferrell, made on July 1, 1898, is not a contract of sale, but only an option. We approve the holdings of the majority opinion of the Court of Civil Appeals on this point, and think the instrument conveys an estate in the land on condition consequent—the condition being the payments according to the contract. Taber v. State, 38 Tex. Civ. App. 235, 85 S. W. 835; Taber v. Dallas County, 101 Tex. 241, 106 S. W. 332; Texas Co. v. Daugherty, 107 Tex. 234, 176 S. W. 717, L. R. A. 1917L, 989; Foard County v. Sandifer, 105 Tex. 420, 151 S. W. 523.

[5] Having held that the contract, denominated bond for title. was a contract for sale in form, it is now necessary to determine whether it is infected and rendered void by virus from the option agreement between Potter county and Ferrell, above discussed. We have held that contract void for lack of power in the county to make it. It was not rendered void by public policy. That which is inherently and fundamentally void cannot be rendered void. Even if not contrary to public policy, such contract was void. It was void more fundamentally than because it was contrary to public policy. The courts do not merely refuse to enforce it; they have no power to enforce it, because it created no obligation. Therefore the option, never having existed, could not have infected the sale contract. There is a marked difference between agreements which courts refuse to enforce because contrary to statute or public policy, and agreements which the parties never had any power to make, and which, therefore, never created any obligations, and never effected any change in the relations of either party to the other or to the subject-matter. Since the option agreement was void from the beginning, it was no more than if the parties had signed a blank piece of paper.

It never came into being as a contract. Having never existed, there was no infection in it, and no poison could have passed therefrom into the sales contract. Since the option contract never existed, the sales contract could not have grown out of it, nor could the sales contract have been based upon it. By the option agreement, the commissioners' court of Potter county did not divest itself of any power of sale of the land to anyone upon any terms it saw fit. The particular individuals composing the court which made the agreement with Ferrell placed no shackles on any succeeding court by the agreement. The agreement prohibited no one desiring to purchase the land from making his bid and compelling the court to consider it.

Aside from these considerations, the record in this case does not show that the commissioners' court of Potter county, which made the sale contract with Ferrell, acted otherwise than in pursuance of its untrammeled free will exerted in execution of its general powers of sale when it made that contract. It is contended that it is recited in the sales contract "that it is executed 'under and by virtue of the option agreement' and the conclusion is inevitable that it is void if the option is void." We do not agree that it is so recited in the contract. The recitation is as follows:

"It is ordered by the Commissioners' Court of Potter county that Lon D. Marrs, county judge of said county, be authorized and instructed to make and deliver to R. S. Ferrell a bond for title of Potter county's school lands situated in Cochran county, Tex., under and by virtue of an option of purchase said Ferrell has with Potter county, Tex., under an order of this court, said order being on record on page 153, Book 2."

We construe this recitation to mean that the commissioners' court of Potter county authorizes and instructs Lon D. Marrs to make and deliver to R. S. Ferrell a bond for title to the Potter county school lands on its own free will and accord. It is not "ordered" "under and by virtue of an option of purchase," but it directs Marrs to make and deliver it "under and by virtue of an option of purchase." We agree with the Court of Civil Appeals that this was merely a reference for the guidance of Marrs in his preparation of the contract. Marrs was authorized and instructed to make and deliver the bond for title by the order of the court and not by the recited option of purchase. The court, in the free exercise of its general powers of sale, was eager and willing, at that time, independently of the option agreement, to sell the land for the price and on the terms set out in the option agreement. The only other evidence on this point disclosed by the record is the testimony of Lon D. Marrs, county judge of Potter county, at the time the contract was made. He testified that:

"When the contract of sale with Ferrell dated July 25, 1898, was made, the commissioners' court was desirous of selling the Potter county school lands to R. S. Ferrell, or to any other purchaser, for the price and on the terms made to R. S. Ferrell, and if they had not so desired the lands would not have been sold.

"The reason the commissioners' court desired to sell these lands on the terms and for the price that was made to R. S. Ferrell was, that the free schools of Potter county were in need of revenue, and the commissioners' court desired to sell these lands to obtain the interest to supplement the available school fund to Potter county, which was regarded as a considerable sum added to the available school fund of Potter county at that time, and while this sum may seem little at this time, it was considered of much advantage and addition to the available school fund of Potter county at that time, and up to the time of sale of said lands the court had been unable to procure a sale from any source."

Again, the Supreme Court has recognized the doctrine, "that the test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case." Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363; Beer v. Landman, 88 Tex. 450, 31 S. W. 805; Hartford Fire Insurance Co. v. City of Houston, 102 Tex. 317, 116 S. W. 36.

In the case of Beer v. Landman supra, our Supreme Court said:

"In Frost v. Plumb (1873) 40 Conn. 112, discussing the principle under consideration, and following in the line of the English and Massachusetts cases above cited, the court say: 'We understand the rule to be this: The plaintiff cannot recover when it is neccessary for him to prove, as a part of his cause of action, his own illegal contract, or other illegal transaction; but if he can show a complete cause of action without being obliged to prove his own illegal act, although such illegal act may incidentally appear, and may be important even as explanatory of other facts in the case, he may recover. It is sufficient if his cause of action is not essentially founded upon something which is illegal. If it is, whatever may be the form of the action, he cannot recover.'"

The principle involved in the above quotation was adopted an applied by the Supreme Court in that case.

If Ferrell or Slaughter had sued for specific performance of the sale contract, it would not have been necessary for him either to allege or prove the option agreement as a part of his cause of action. In order for the county to have availed itself of the theory of defense advanced here—the invalidity of the sale contract by reason of the option agreement—the county and not the plaintiff would have been forced to rely upon the option agreement. Therefore, if we treated the option agreement as illegal in the sense of being antagonistic to law or the public policy of the state, the contract of sale is not so connected with it as to have rendered it unenforceable if suit for specific performance had been brought on it.

The contract of sale was a new agreement independent of the option agreement, based on a separate and distinct consideration. The option agreement formed no part of the consideration of the sale contract. So the Court of Civil Appeals found, and we think that finding amply supported by the evidence, and we find no evidence to the contrary. There was no conflict of testimony on the point, and therefore no issue of fact for the jury.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.