**SAYLES v. CITY OF ABILENE. (No. 237.)\***

(Court of Civil Appeals of Texas. Eastland. Dec. 3, 1926. Rehearing Denied Jan. 7, 1927.)

**1. Pleading ⟲⟼214(1)—Allegations of petition are taken as true, on general demurrer.**

In considering whether petition is subject to general demurrer, its allegations must be taken as true.

**2. Municipal corporations ⟲⟼225(3)—Commissioners may contract to sell land purchased to acquire basin for lake containing city's water supply, but not part of water system (Vernon's Ann. Civ. St. 1925, art. 1015).**

City commissioners *held* not to act beyond authority in contracting to sell land, where such land was never part of waterworks system, nor actually used therefor, but was purchased so that city might acquire title to land used as basin for lake containing water supply, in view of Vernon's Ann. Civ. St. 1925, art. 1015.

**3. Municipal corporations ⟲⟼244(3)—Municipal officers are presumed to act within authority, in good faith, and for best interests of municipality.**

Law relative to municipal corporations presumes that officers act within limits of authority, and in good faith, and for best interest of municipality they represent.

**4. Municipal corporations ⟲⟼225(4)—City commissioners' determination that lands were not part of waterworks system nor necessary thereto is binding, if reasonable.**

Determination of city commissioners that certain lands were not integral part of city's waterworks system, nor necessary thereto, is binding on city, if supported by facts sufficient to sustain judgment of reasonable man in exercise of honest discretion.

**5. Municipal corporations ⟲⟼244(1)—Petition for specific performance of city's contract to sell land, not part of waterworks system, need not allege consent of voters.**

In suit for specific performance of land contract with city commissioners, petition alleging that such land was not part of city waterworks system, nor actually used therefor, *held* not demurrable on ground that it did not allege that consent of qualified voters had been obtained for sale.

**6. Municipal corporations ⟲⟼226—City commissioners' contract, providing strip about lake containing water supply be used as road and giving purchaser of land use of water, held invalid.**

Provisions, in contract by city commissioners to sell land purchased to acquire basin for lake containing city's water supply, that strip between land sold and lake should be used only for roadway purposes, and that buyer have unrestricted privilege to use water, *held* invalid, since commission could not so bind itself or its successors.

**7. Municipal corporations ⟲⟼244(3) — Invalid provisions in city's land contract held not to destroy entire contract.**

Provision in land contract with city that strip between land sold and lake should be used only for roadway purposes and that buyer have unrestricted privilege to use water, though invalid, *held* not to destroy entire contract, notwithstanding general rule that whole consideration of contract is void, if any part is illegal.

**8. Frauds, statute of ⟲⟼110(1)—Land contract is not within statute, where property may be identified from description therein.**

Contract for sale of real property is not within statute, where from description contained therein property may be identified.

**9. Evidence ⟲⟼460(4)—Oral evidence is admissible to identify subject-matter of contract, where contract itself furnishes key to such identification.**

Though oral testimony is inadmissible to prove terms of written contract, such evidence is admissible to identify subject-matter, where

⟲⟼For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 2, 1927.

contract itself furnishes key to such identification.

**10. Evidence ⬒➡460(6)—Parol evidence held inadmissible to show meaning of "proposed maximum capacity" of lake, in contract to sell land above water level thereof.**

Where city contracted to sell land above water level of proposed maximum capacity of lake, parol evidence *held* inadmissible to show what was meant by "proposed maximum capacity."

**11. Specific performance ⬒➡29(2)—In land contract, description of land adjacent to lake held not so indefinite as to render petition for specific performance demurrable.**

In land contract, description of land adjacent to lake, "and situated above the water level of the proposed maximum capacity" of lake and above strip 100 feet wide around it, *held* not so indefinite as to render petition for specific performance demurrable.

**12. Specific performance ⬒➡29(2)—City's contract to convey certain tract of land cannot be specifically performed, where it reserved "such land as it desires" and repudiated contract.**

City's contract to convey certain tract of land cannot be specifically performed, where by paragraph of contract city reserved "such land as it desires" out of such tract, and its subsequent repudiation of contract showed desire not to convey any part of it.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by Henry Sayles, Jr., against the City of Abilene. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Sayles & Sayles and Wagstaff, Harwell & Wagstaff, all of Abilene, for appellant.

Davidson & Hickman, of Abilene, for appellee.

PANNILL, C. J. Inasmuch as this appeal presents the question of the sufficiency of the petition filed by appellant, as plaintiff, in the district court, it will be necessary to make a detailed statement of the plaintiff's petition and the grounds relied on by the appellee to show its insufficiency. It is believed that this can be done, however, in substance, without setting out in full either the petition or the several demurrers urged thereto. The purpose of the suit is for specific performance of a contract entered into between the board of commissioners of the city of Abilene and appellant. The petition alleged that the appellee is a municipal corporation, operating under a special charter granted to it by the Legislature. Among other powers given to said city by its charter was a power to sell any real estate or personal property owned by it. By appropriate allegations the execution of the contract sued upon was shown to have been made in accordance with the law governing the execution of contracts by a municipal corporation. The contract is set out in full in the petition, and no question is made as to its form or manner of execution, and, in substance, it provides for the sale by said city to appellant of certain lands situated in Taylor county, Tex., and described as follows:

"West one-half of section 2, blk. 5, T. & P. R. R. survey, known as the Smallwood land, approximately 400 acres.

"The south one-half of section 10, blk. 3, S. P. R. R. Co. survey, 320 acres.

"Also such parts of the hereinafter described lands heretofore purchased by said city, the portions or parts of said lands sold to said Sayles being the lands not included within the Lake Abilene and situated above the water level of the proposed maximum capacity of Lake Abilene, and the said city reserves from all the hereinafter named lands a strip of land 100 ft. wide around the water level at maximum capacity of said lake, and it is understood and agreed that all the intervening spaces between the water level of said Lake Abilene and the lands hereby sold shall be used for roadway purposes only.

"(1) A part of blk. 4, T. & P. R. R. survey, 176 acres, originally purchased by said city from R. L. Hill.

"(2) A part of the Louis Sousie pre-emption survey of 85 acres, originally purchased by said city from R. L. Hill.

"(3) A part of the Mary Cranfill pre-emption survey of 132 acres, purchased by said city from W. H. Knight.

"(4) A part of the Samuel Andrews survey No. 117, of 415 acres, originally purchased by said city from G. L. Miller.

"(5) A part of the Samuel Andrews survey No. 117, of 683 acres, originally purchased by said city from A. Young.

"(6) The said city reserves such land as it desires out of the 415 acres of the Samuel Andrews survey, originally purchased from G. L. Miller, below the dam and around both ends of the dam.

"Other propositions of said contract considered material are as follows:

"Said city allows said Sayles the privilege of maintaining windmills and pumps with pipes projecting into said lake, and the said Sayles is to have access to said lake for said purposes. No water to be furnished for irrigation or commercial purposes.

"The city engineer of said city is to survey and furnish plat and field notes as to the acreage hereinabove bought and sold, in order to compute the acreage to be delivered and deeded under this contract of sale."

Other parts of the contract related to the terms of the sale, the time for the consummation thereof, and these other provisions are not in controversy.

The petition further alleged, in substance, that the lands hereinbefore described are located in Taylor county, without the city of Abilene, and, with the exception of first and second tracts, are adjacent to and near the lake known as Lake Abilene, owned by the

city of Abilene, and from which said city gets its water supply and sells water to the city and others. That the first and second tracts are about 5 miles from said lake, but are on the watershed from which the flood waters flow into Lake Abilene. That Lake Abilene is fed by the rain waters falling on the watershed of Elm creek, which is in Taylor and Nolan counties, Tex., and the watershed covers many thousand acres of land and many sections of land not owned by the city of Abilene. That the remaining part of the lands described in said contract are parts of the original body of land composed of numerous tracts of land on which Lake Abilene is built and constructed, and said lands adjoin Lake Abilene, the greater portion being above the dam which impounds the waters of Lake Abilene and a small portion being below the dam which impounds the waters of Lake Abilene. That the city of Abilene owned all of said lands above described at the time it began to use the said Lake Abilene, selling water therefrom to its citizens and others, and the rain waters from the majority of said lands flow into Lake Abilene, but are much higher in altitude than Lake Abilene and much higher than the basin which holds the water in said Lake Abilene. The above lands were paid for with money secured from a bond issue for the purpose of purchasing a site and constructing a reservoir for the city of Abilene. That at the time the lake was constructed, the appellee had secured a permit from the board of engineers for the purpose of impounding the water from the point where the dam was constructed, which permit authorized such city to impound a maximum of 15,000,000,000 gallons of water, and that said amount of water was the maximum capacity of said lake, as set forth in said contract and within the meaning of the parties thereto.

Two permits were alleged: The first to impound approximately 6,000,000,000 gallons of water and was issued in February, 1918. Later and prior to the execution of the contract sued on, a permit authorizing the appropriation of 15,000,000,000 gallons was issued by said board, such appropriation to be made within a period of 10 years from the date of the last permit and not thereafter. That the dam which had been built when the contract in issue was made, impounded approximately the amount of water called for in the first permit. That the plaintiff had surveyed land around the maximum level of said lake and had fixed the boundaries of such maximum level, and that the amount of acreage covered by said contract, after fixing such maximum level and deducting the 100 feet roadway, amounted to 1,950 acres.

Further allegations were made that, while the city purchased the property described in the contract, at the time of the purchase of the property on which the lake was actually

built, as a matter of fact, the lands described in the contract were purchased in order for the city to get title to the lands actually used in the basin of the lake, and that none of the lands described in the contract are needed for the purpose of city waterworks or for the purpose of supplying water to the city of Abilene, save and except the lands actually covered by the lake and not in controversy, and the 100 feet above high water level also not in controversy. That the city commissioners of the named city had determined not to use the lands, as described in the contract, as part of the water system, and had determined that the same are not necessary for the water system of the city of Abilene and are not a part of such water system.

Performance on the part of appellant is alleged and failure of the performance on the part of the city, but the appellant avers that, instead of performing, the city later repudiated said contract and passed a resolution evidencing such repudiation and spread the same upon the minutes of the city commissioners, its governing board. That the said city has title to the land agreed to be conveyed and is able to convey title, but declines to do so.

The city answered by general demurrer and several special exceptions so called. The special exceptions were, however, in the main, and each was, in substance, a general demurrer. These exceptions, in fact, raise three propositions: First. The authority of the city of Abilene to perform the contract without the approval of the same by the qualified voters of said city of Abilene at an election held for that purpose. Second. That the provisions of the contract itself and the subject-matter thereof rendered said contract void and incapable of said performance. Third. That the description in the contract of the lands to be sold was so indefinite and uncertain as to fall under the condemnation of the statutes of fraud.

These special exceptions were sustained, and the plaintiff declined to amend, and thereupon appellee's general demurrer was also sustained, and, the appellant further declining to amend, the cause was dismissed. The question really presented, under this state of the record, is whether the petition is subject to a general demurrer, and the correctness of the trial court's action in holding that it was.

[1] In considering whether a petition is subject to a general demurrer, its allegations must be taken as true. The propositions presented by the appellee to sustain the judgment of the learned trial court are as follows:

First, that, in making the contract, the city commissioners exceeded their authority because the petition showed that the land in question had been purchased with the proceeds of a bond issue, and therefore the city

held said property in trust, and that the city commissioners could not alienate the trust property; second, that the petition disclosing that the lands in controversy were part of the waterworks system of the city, that the contract of the city commissioners for the sale of a part thereof was invalid until approved by majority of the qualified voters of said city at an election to be held for that purpose, and that no such approval was pleaded; third, that the petition showed on its face that the board of commissioners exceeded its authority in undertaking to limit the control of the city over its lands not sold, and in granting to appellant a perpetual right to enter the city's reservoir and take water therefrom for his private use and thereby depriving the future commissioners of the city of the right to regulate the use of its own properties; and fourth, that the description is so general and indefinite that it is impossible therefrom to identify the lands contracted to be sold, but that such identification depended upon the future determination of the governing body of the city based upon the report of its engineer.

The applicability of the several propositions urged by appellee and sustained by the court is vigorously denied by the appellant.

The case is well briefed by both parties and was ably argued upon submission.

Appellant claims that the city of Abilene held its waterworks in its proprietary right, and not in its governmental capacity, and relies upon such cases as Vincennes v. Citizens' Gaslight Co., 132 Ind. 114, 31 N. E. 573, 16 L. R. A. 485, at page 489, Fidelity Trust & Guaranty Co. v. Fowler Water Co. (C. C.) 113 F. 560, at page 567, and other cases holding that a municipal corporation has the power to contract with a private party for the construction and operation of a waterworks system and is bound by its agreement to pay rentals for the use of its hydrants, such contract running through a series of years, and that the fact that such contract does, to some extent, limit and control the power and authority of succeeding administrations of the city government does not limit the power of the city to make the agreement. Appellee maintains that the doctrine announced in the cases cited above and others to the same effect are in conflict with the decision of our Supreme Court in the case of City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 143, in which case our Supreme Court held that a city ordinance granting to a water company the right and privilege, for the term of 25 years, of supplying the city of Brenham and its inhabitants with water for domestic and other purposes and for the extinguishment of fires, in consideration of certain annual payments for the service, was invalid for the reason, among others, that a municipal corporation cannot make a contract which will embar-

rass or interfere with its future control over matters involving the public interest. If the question as to the validity of the contract in question was to be determined by these decisions, we would be constrained to hold that the cases above cited by appellant announced a contrary doctrine from the one announced in the City of Brenham v. Brenham Water Co., supra, but we do not consider that the sale by the city of its property is to be governed by the decision of our Supreme Court last referred to, but that said question is governed by entirely different legal principles. In this state neither the Constitution nor statute prohibits the sale of property purchased for and used by a city for a waterworks system. On the other hand, our Legislature expressly granted the city of Abilene the authority to sell any property, real or personal, owned by it and the only limitation upon the authority thus granted is found in article 1015, Vernon's Annotated Texas Statutes, wherein it is provided, in subdivision 30 of said article, that no city or town may sell or lease its water system unless the sale is authorized by a majority of the qualified taxpaying voters, voting at an election held for that purpose. In fact, in passing this statute, the Legislature recognized the right of the city to sell or lease its waterworks system, and thereby intended to restrict said right to those cases where the consent of the majority of its qualified voters was obtained, as provided in the article above referred to.

The question to be decided is not as to whether the city of Abilene holds its waterworks system by virtue of its proprietary or governmental powers, nor its right to sell its waterworks system, as these questions are plainly foreclosed by the acts of the Legislature above cited, but the correctness of the trial court's decision in sustaining the demurrer depends upon the answer to these questions. First. Does the petition allege facts which support the determination of the commissioners of the city that the property was not, in fact, a part of the waterworks system, nor necessary thereto? Second. Is the contract invalid on account of the provisions as to the use of the 100-foot strip for roadway purposes only, and the right given appellant to use water from the lake? Third. Is the contract sufficiently definite as to description of the land so as to be subject to specific performance?

[2, 3] It will be noted that the petition alleged that the land in question was never a part of said waterworks system, nor actually used therefor, but that the land was purchased when the lake was established in order that the city might acquire title to the land actually used as a basin for the lake. For the purpose of this decision, this allegation must be taken as true, and, if true, it certainly does establish the fact that the land in question was never a part of the wat-

erworks system of appellee, but, aside from this allegation, it is alleged that the lands in controversy constitute no integral part of said waterworks system, and that the city commission has so determined and so declared.

It is believed that these allegations are sufficient to show that the city commissioners did not act beyond their authority in making the contract in question. The law relating to municipal corporations presumes that officers of such municipality act within the limits of their authority, and in good faith, and for the best interest of the municipality they represent. Webb v. School Dist. No. 3 of Lac Qui Parle County et al., 83 Minn. 111, 85 N. W. 932; Gillette-Herzog Mfg. Co. v. Board of Com'rs of Aitkin County, 69 Minn. 297, 72 N. W. 123.

[4] We believe that a determination by the commission that the lands were not an integral part of the city's waterworks system, nor necessary thereto, would be binding on the city, if supported by facts sufficient to sustain the judgment of a reasonable man in the exercise of an honest discretion.

[5] Here the facts are pertinently alleged which show that the land in question was not a part of the city's waterworks system, and, if true, would support the decision of the commissioners, and the allegation must be taken at face value. So the holding is that the petition was not subject to the objection that it did not allege that the consent of the qualified voters had been obtained for the sale of a part of the waterworks system, because the petition clearly shows that the land sold was never a necessary part of such waterworks system.

[6, 7] The next question for consideration is whether those provisions of the contract, that the 100-foot strip between the land sold and the lake shall be used for roadway purposes, and that part of the contract allowing appellant the unrestricted privilege of the use of water from the lake for domestic purposes are invalid, under the decision of City of Brenham v. Brenham Water Co., supra, and also whether, if such provisions are invalid, this invalidates the entire contract. The conclusion has been reached that said provisions are invalid and that the city commission could not, under the rule laid down in the case last referred to, bind itself nor its successors as to the use of the property not sold, nor grant appellant the unrestricted use of water from said lake, without further compensation for an indefinite period of time so as to bind future commissioners. See, also, Texas Water & Gas Co. v. City of Cleburne, 1 Tex. Civ. App. 580, 21 S. W. 393.

These provisions having been determined to be invalid, does such determination destroy the entire contract? The authorities seem to answer this question in the negative. Wicks v. Comves, 110 Tex. 532, 221 S. W.

938; Potter County v. C. C. Slaughter Cattle Co. (Tex. Com. App.) 254 S. W. 775; Haswell v. Blake (Tex. Civ. App.) 90 S. W. 1125.

The question in a difficult one. The general rule is that the whole consideration of a contract is void if any part of it is illegal, but while a promise on several considerations, one of which is unlawful, is void, yet where one for a legal and valuable consideration agrees to perform two acts which are severable, one of which is lawful and the other unlawful, the contract may be enforced as to that for which it was lawful to contract and held void as to the other. Wicks v. Comves, supra. This case seems to come within the statement last made. Here the city for a consideration which is lawful agreed to perform two acts, one of which is lawful under the allegations, and the other unlawful. Therefore the contract will be enforced, at the option of the party seeking to enforce it, as to the part which is lawful, and performance denied as to the illegal provision.

[8, 9] The remaining question is as to the sufficiency of the description. In deciding that question, it must be kept in mind that a contract for the sale of real property is not within the statute of frauds, where, from the description contained in the contract, the property may be identified. In other words, that is certain which can be made certain, but the means of locating or identifying the property must be found in the contract itself. In Stroburg v. Walsh (Tex. Civ. App.) 203 S. W. 391 (writ refused), it is held that oral testimony is admissible in a proper case to identify the subject-matter of a contract, but the oral testimony which is admissible must be suggested by the description contained in the writing. Oral testimony is not admissible to prove the terms of a contract which the parties have put in writing, but such evidence is admissible to apply the terms of the contract to the subject-matter; that is to say, to identify such subject-matter, where the contract itself furnishes the key to such identification. Jones v. Carver, 59 Tex. 294.

[10, 11] The vice claimed in the description in this case is as to those tracts lying adjacent to Lake Abilene, and as to that part of the contract which provides that the lands sold are the lands not included within said lake and situated above the water level of the proposed maximum capacity of Lake Abilene, and above a strip 100 feet wide around said water level at maximum capacity of said lake. The appellee claims that said provision referred to is indefinite and uncertain, and that it furnishes no key to the identification of said lands. We do not believe the description is so indefinite as to render the petition subject to demurrer.

Parol evidence is not admissible to show what was meant by the words "proposed

maximum capacity," but other evidence may be available to appellant. The law requires the filing and recording of a map with a permit granted by the board of water engineers, which map must show the shore line at maximum capacity of the body of water, which the permit authorizes to be impounded. Such a map, together with a map of the county, might show that the 100 feet from the shore line of the present lake would not approach the boundaries of the land described in the contract, and therefore, in providing for 100 feet between the shore line of the lake at maximum capacity and the boundary of the land to be conveyed, the parties had in contemplation the shore line under the last permit. Unless it clearly appears that appellant could not, without resorting to parol testimony, show the permit under consideration between the parties, his right to a hearing should not be denied by sustaining a demurrer.

The parties evidently contemplated that a survey could be made which would accurately compute the acreage to be conveyed under the agreement, in that provision was made for a survey by the city engineer. The petition alleged that the appellant had had the land surveyed and that a survey upon the ground showed that the acreage, which the contract required to be conveyed, was definitely established to be 1,950 acres. We do not believe that we can declare that a survey would not locate on the ground the maximum capacity of the lake under the last permit issued. The testimony of experts skilled in surveying might demonstrate conclusively that a survey upon ground would actually and accurately locate the boundaries of the land contracted to be sold. In the case of Wilson v. Smith, 50 Tex. 365, a deed was excluded upon the objection that it was void for want of proper description. The description was 160 acres of land, being a part of the homestead tract of James Bankston, exclusive of 200 acres exempt by law. In holding that the objection was improperly sustained, the Supreme Court say: "Certainly the deed cannot be pronounced void upon mere inspection; for it cannot be said that it appears from the face of the deed that the land conveyed cannot be identified by the aid of extrinsic evidence." Other cases thought to support the view that contract is not void on its face for want of description are Brainard v. Jordan et al. (Tex. Civ. App.) 60 S. W. 784; Pierson v. Sanger, 93 Tex. 160, 53 S. W. 1012; Smith v. Westall, 76 Tex. 509, 13 S. W. 540.

A contract in almost identical terms was held sufficient by the Supreme Court of Alabama in Wilkins v. Hardaway, 159 Ala. 565, 48 So. 678. See, also, Minneapolis & St. L. R. Co. v. Cox et al., 76 Iowa, 306, 41 N. W. 24, 14 Am. St. Rep. 216; McKevitt v. City of Sacramento, 55 Cal. App. 117, 203 P. 132; Ryan v. United States, 136 U. S. 68, 10 S. Ct. 913, 34 L. Ed. 447, 453.

Appellee relies principally upon Penn v. Texas Yellow Pine Lumber Co., 35 Tex. Civ. App. 181, 79 S. W. 843, and Rosen v. Phelps (Tex. Civ. App.) 160 S. W. 106. The description in the contract now considered is definite to a far greater degree than the description held insufficient in the cases just referred to. In the first, the only description was:

"I agree to convey to you the 6,100 acres under consideration, in Tyler county, for $1.-62½ per M. feet for the standing timber on said land."

It was held that oral testimony was not admissible to show what 6,100 acres was under consideration. Here the land agreed to be sold was definitely and certainly described, if a boundary could be located on the side next to the Lake. In Rosen v. Phelps, supra, the contract was to convey 3,000 acres in Bosque county. That description is certainly not to be compared with the one above.

[12] We do not believe that paragraph 6 of the contract, as copied above, relating to 415 acres of the Samuel Andrews survey, can be specifically performed. The contract is not sufficient to require the conveyance of said tract. The city's repudiation of the contract evidenced its desire not to convey any part of the Samuel Andrews survey. The conveyance of this survey was reserved in paragraph 6.

For the reasons indicated, the judgment is reversed and the cause remanded for further proceedings not inconsistent with what has been stated above.